IN THE CASE OF


UNITED STATES, Appellee

v.

Richard B. SMITH, Sergeant
U.S. Marine Corps, Appellant

No. 01-0294

Crim. App. No. 98-2155

United States Court of Appeals for the Armed Forces

Argued October 4, 2001

Decided January 30, 2002


EFFRON, J., delivered the opinion of the Court, in which
GIERKE and BAKER, JJ., and SULLIVAN, S.J., joined.  CRAWFORD,
C.J., filed an opinion concurring in part and in the result.


<u>Counsel</u>


For Appellant:  <u>Lieutenant Rebecca S. Snyder</u>, JAGC, USNR (argued); <u>Lieutenant
    Commander Dale O. Harris</u>, JAGC, USNR, and <u>Lieutenant Glenn Gerding</u>, JAGC,
    USNR (on brief); <u>Lieutenant Rebecca S. Snyder</u>, JAGC, USNR.


For Appellee:  <u>Lieutenant Jason A. Lien</u>, JAGC, USNR (argued); <u>Commander Peter
    A. Dutton</u>, JAGC, USN (on brief); <u>Colonel Marc W. Fisher, Jr.</u>, USMC,
    <u>Colonel R.M. Favors</u>, USMC, and <u>Lieutenant Commander Philip Sundel</u>, JAGC,
    USNR.


Military Judge:  R. E. Hilton


<u>THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION</u>.

Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted appellant, pursuant to his pleas, of conspiracy to distribute marijuana and wrongful use, introduction, and distribution of marijuana, in violation of Articles 81 and 112a, Uniform Code of Military Justice, 10 USC §§ 881 and 912a, respectively.  He was sentenced to a dishonorable discharge, confinement for five years, and reduction to the lowest enlisted grade.  The convening authority approved the sentence but suspended confinement in excess of thirty-six months for a period of twelve months.  In an unpublished opinion, the Court of Criminal Appeals affirmed the findings and approved only so much of the sentence that included a bad-conduct discharge, confinement for thirty-six months, and reduction to the lowest enlisted grade.

On appellant's petition, we granted review of the following issue:

> WHETHER THE NAVY-MARINE CORPS COURT OF
> CRIMINAL APPEALS ERRED BY REFUSING TO APPLY
> THIS COURT'S DECISIONS IN UNITED STATES V.
> HARDCASTLE, 53 MJ 299 (2000), AND UNITED
> STATES V. WILLIAMS, 53 MJ 293 (2000), WHICH
> HELD THAT PLEAS OF GUILTY ARE IMPROVIDENT IF
> BASED UPON A MATERIAL MISUNDERSTANDING OF A
> TERM IN THE PRETRIAL AGREEMENT.

United States v. Smith, No. 01-0294/MC

For the reasons discussed below, we set aside the decision of the Court of Criminal Appeals and remand the case to that court for further proceedings.

## I.  LEGAL BACKGROUND

### A.  General Principles

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  Santobello v. New York, 404 U.S. 257, 262 (1971). If the Government does not fulfill its promise, even through inadvertence, the accused "is entitled to the benefit of any bargain on which his guilty plea was premised."  United States v. Bedania, 12 MJ 373, 375 (CMA 1982).

To ensure that the record reflects the accused understands the pretrial agreement and that both the Government and the accused agree to its terms, the military judge must ascertain the understanding of each party during the inquiry into the providence of the plea.  See United States v. Care, 18 USCMA 535, 40 CMR 247 (1969); RCM 910(f)(3) and (4), Manual for Courts-Martial, United States (2000 ed.).[*]  In addition, after imposing sentence, the military judge must address the parties'

_____

[*] All Manual provisions are identical to the ones in effect at the time of appellant's court-martial.

3

understanding of any limitations on the sentence in order to assure that there is a mutual agreement.  See United States v. King, 3 MJ 458 (CMA 1977); United States v. Green, 1 MJ 453 (CMA 1976); RCM 910(h)(3), Manual, supra.  "If the military judge determines that the accused does not understand the material terms of the agreement, or that the parties disagree as to such terms, the military judge shall conform, with the consent of the Government, the agreement to the accused's understanding or permit the accused to withdraw the plea."  Id; see United States v. Olson, 25 MJ 293, 296 (CMA 1987).

## B.  Materiality of the Provision

In an appeal that involves a misunderstanding or nonperformance by the Government, the critical issue is whether the misunderstanding or nonperformance relates to "the material terms of the agreement."  See RCM 910(h)(3).  When the issue is whether the collateral consequences of a court-martial constitute a material component of an agreement, a guilty plea may be withdrawn "only when the collateral consequences are major and the appellant's misunderstanding of the consequences (a) results foreseeably and almost inexorably from the language of a pretrial agreement; (b) is induced by the trial judge's comments during the providence inquiry; or (c) is made readily

4

apparent to the judge, who nonetheless fails to correct that misunderstanding."  Bedania, supra at 376.

Whether a particular collateral consequence amounts to a material matter depends upon the circumstances of the case. See, e.g., Olson, supra at 297 (misunderstanding regarding administrative matters affecting restitution); United States v. Williams, 53 MJ 293 (2000) (misunderstanding regarding relationship between the accused's pay status and waiver of automatic forfeitures of pay under Article 58b, UCMJ, 10 USC § 858b); United States v. Hardcastle, 53 MJ 299 (2000) (same); United States v. Albert, 30 MJ 331 (CMA 1990) (no relief warranted where the accused's misunderstanding did not result from representations by the convening authority, trial counsel, or the military judge).

## C.  Remedy

In the event of a misunderstanding as to a material term in a pretrial agreement, the remedy is either specific performance of the agreement or an opportunity for the accused to withdraw from the plea.  See Santobello, 404 U.S. at 263.  The Government may provide alternative relief if it will achieve the objective of the agreement.  See, e.g., United States v. Mitchell, 50 MJ 79, 82-83 (1999); Olson, supra at 298-99.

5

II.  FACTUAL BACKGROUND

A.  Trial

Appellant pleaded guilty to the charged offenses pursuant to a pretrial agreement.  The agreement permitted the convening authority to approve any punitive discharge but obligated him to suspend all confinement in excess of forty months if a punitive discharge was adjudged.  With respect to forfeitures, the agreement provided that

> all adjudged forfeitures and/or fines will
> be suspended for one (1) year from the date
> of trial. . . .  All automatic forfeitures
> will be deferred until the convening
> authority acts, at which time the said
> forfeitures will be waived for a period of
> six months.  These forfeitures will go to
> the accused's wife and child.

See Arts. 57(a)(2) and 58b(a)(1) and (b), UCMJ, 10 USC §§ 857(a)(2) and 858b(a)(1) and (b).

In accordance with applicable law, the military judge examined the details of the agreement, except for the sentence limitations, during his inquiry into the providence of the plea.  See King and Green, both supra.  During the providence inquiry, the military judge provided appellant with the following general information about automatic forfeitures:

> MJ:  Now, as a result of 58b of the Uniform
> Code of Military Justice -- that is, Article
> 58b -- any approved court-martial sentence
> that includes either a punitive discharge
> and confinement or confinement for more than
> six months results in the forfeiture of all

6

> pay and allowances due during the period of confinement.
>
> However, the convening authority may waive these forfeitures for a period of up to six months, as an aspect of your pretrial agreement or otherwise, in which case the pay and allowances are given to a dependent.
>
> Do you understand that?
>
> ACC: Yes, sir.

Subsequently, appellant testified during the sentencing proceeding that, if "substantial forfeitures" were imposed, his "family would really be hurting, sir, for real, my kids, my ex-wife because she's just going to school. You know, she needs the support. My kids need the support." Trial counsel, in his sentencing argument, stated that "[t]he Government concedes that he does support his family, and we won't ask for forfeitures in this case." Defense counsel asked the military judge

> to consider that forfeitures would only probably impact the family and not Sergeant Smith. A good portion of his money already is going to the family. He certainly can't benefit much from his pay at this point. We ask the military judge to leave that alone and allow the family to at least benefit from that.

After hearing from counsel, the military judge sentenced appellant to a dishonorable discharge, confinement for five years, and reduction to the lowest enlisted grade. Thereafter, he examined the sentencing portion of the pretrial agreement and inquired into the parties' understanding as to its meaning. The

7

inquiry included the following discussion concerning fines and

forfeitures:

> MJ:  . . . Paragraph 3 deals with forfeiture
> or fine.  Now, there was no forfeiture and
> there was no fine adjudged to [sic] this
> case, so that part of the agreement has no
> bearing on the sentence. . . .  Now, is the
> way that I have explained this part of the
> agreement comport [sic] with your
> understanding, Sergeant Smith?
>
> ACC:  Yes, sir.
>
> MJ:  Do you have any questions about the
> effect of the sentence limitation portion of
> the pretrial agreement on the sentence
> adjudged?
>
> ACC:  No, sir.
>
> MJ:  Does the way I have expressed my
> understanding of the effect of the sentence
> limitation portion of the agreement comport
> with counsel's understanding?
>
> TC:  Yes, sir.
>
> DC:  Yes, sir, with the exception of perhaps
> the last sentence of Paragraph 3 which deals
> with automatic forfeitures, which I do think
> the agreement would affect it in that regard
> if he were -- although no forfeitures were
> adjudged, he may in fact -- in fact, he will
> --
>
> MJ:  All right.  That's a good point,
> Captain O'Connell.
>
> DC:  -- be subject to the automatic
> forfeitures.
>
> MJ:  That's a good point.  Sergeant Smith,
> pursuant to earlier matters I addressed with
> you concerning automatic forfeitures, the
> convening authority may implement automatic

forfeiture provisions against your pay except that Paragraph 3 of the agreement reflects that forfeitures not imposed, or I should say the pay against which forfeitures is [sic] not imposed, will go to your wife and your -- it says here "child."

Is that your understanding?

ACC:  Yes, sir.

MJ:  ...Now, I understand you have two daughters and two sons?

ACC:  Yes, sir.

MJ:  And I also understand that, at this time anyway, you and Miss Dokes are no longer married?

ACC:  Correct, sir.

MJ:  So what is the intent, counsel, of this portion of the pretrial agreement as it pertains to I would imagine Miss Dokes and Sergeant Smith's children, two sons and two daughters?

DC:  Sir, the intent of the pretrial agreement -- and I'm sure Captain Lee can speak to this as well -- is that the money should go to Miss Dokes and the dependent children of Sergeant Smith.

MJ:  Captain Lee?

TC:  The Government concurs, sir.

MJ:  Is that your understanding, Sergeant Smith?

ACC:  Yes, sir.

MJ:  All right.  It is the understanding of the court that that's the case.  Now, administratively, the command will take

9

action to effect that understanding of the pretrial agreement or put it into effect.

And, Captain Lee, I turn to you here because as the representative of the Government, we're dealing with a situation which involves Miss Dokes, who is not the accused's wife and yet is the mother of three of the accused's children. I frankly am not certain whether the regulations that may pertain limit what's available to a spouse or not.

[Trial and defense counsel conferred.]

DC: Sir, it's Sergeant Smith's understanding as well as my own that the regulation would allow such forfeitures, automatic forfeitures, to go to a dependent regardless whether that's his child or his wife. So at least to the children, I think is the effect and intent of that. . . . [H]is intent with negotiating that provision was to ensure that his children were taken care of because that was the burden of his former spouse and that was the main intent behind the agreement, to take advantage of the provision which it's been drafted to allow that.

TC: Sir, we can go and do a pen change. We can just put "dependents" and wipe out "wife and child."

MJ: Well, I'm not sure that's necessary to effect Sergeant Smith's intent here.

Sergeant Smith, did Captain O'Connell correctly state what was your intent to accomplish by this provision of the pretrial agreement?

ACC: Yes, sir.

MJ: Is it your intent by this part of the agreement that your children receive

10

        whatever forfeitures would otherwise
automatically be forfeited?

        ACC:  Yes, sir.

*    *    *

        MJ:  Do counsel understand what I'm saying
here and agree?

        TC:  The Government does, sir.

        DC:  Yes, sir.

        MJ:  I think we have discussed this
sufficiently on the record so that it
reflects Sergeant Smith's intent that his
children, if not the mother of the children,
the mothers of the children, actually
receive those amounts of pay which would
automatically be forfeited but which the
convening authority can take action to
direct to his children.

All participants in this exchange overlooked appellant's pay status, as well as the impact of that status on appellant's expectations under the pretrial agreement and the Government's ability to fulfill those expectations. Appellant had enlisted in the Marine Corps on November 5, 1993, for a term of four years. At the time his sentence was adjudged on January 21, 1998, his enlistment had expired and he was in a legal-hold status. Under applicable service regulations, appellant's entitlement to pay was terminated on the day that confinement was adjudged. See 7A Department of Defense Financial Management Regulation, para. 030207.C (July 1996). Accordingly, there was

11

no pay to forfeit.  Contrary to the understanding of the

parties, there was no pay to protect.

### B.  Post-trial

The Government's misunderstanding of appellant's pay status

continued after trial.  In an undated document entitled "Report

of Results of Trial," trial counsel noted the forfeiture

provisions of the agreement and added:  "These forfeitures will

go to the accused's wife and child."

When appellant learned, post-trial, that his pay had been

terminated, defense counsel sent an e-mail to the trial counsel

seeking to have the agreement enforced on behalf of appellant's

dependents.  That e-mail said:

> Since his discharge has not been approved
> and he is still effectively on duty at the
> brig (i.e., involuntarily extended), it
> seems somebody knee-jerked on this one.  His
> ECC should not have been run while he is in
> this status.  In effect, General Ryan [the
> convening authority] agreed NOT TO RUN THIS
> ENTRY UNTIL THE COMMAND'S HALF OF THE
> BARGAIN IN THE PTA WAS SATISFIED.  However,
> when all is said and done, Smith is not
> concerned with HIS pay, but rather the
> medical benefits of his children.
>
> THE PROBLEM IS THIS:  The mother of Smith's
> children cannot get the dependency paperwork
> changed to HER name while the system still
> thinks they are covered under HIM (until
> something happens at DEERS etc., to change
> SGT SMITH'S STATUS, which still reads
> "active").  In other words, the rest of the
> system still thinks he rates benefits and
> the kids' mother is getting shafted because

12

of it.  Please advise on who has ultimate
control over this issue, so I can talk
directly with him/her.  My client is getting
screwed and the answers I'm getting are not
persuasive.

Even if he rates nothing (which does not
seem correct), we need to make something
happen so his kids can be covered under
their mother (military spouse).

Defense counsel's request was reviewed by the personnel
office on the installation, which concluded that nothing could
be done because appellant was in a nonpay status.  The personnel
officer stated:

. . . The LEGADMINMAN paragraph 3001.1
advises that a member's active service must
be extended if his term of enlistment
expires while waiting trial. . . .  [T]he
only guidance pertaining to a member
confined beyond his ECC is to report a duty
status of "M" on that individual.  The duty
status "M" terminates his pay and
allowances.

Additionally, the LEGADMINMAN paragraph
3001.1 also refers to the MCO P1900.16E, par
1008 (SEPSMAN).  If you look at this
reference it tells you:

Entitlement to pay and allowances
for personnel retained after
expiration of term of service in a
disciplinary status is prescribed
in paragraph 10316a (actually this
is now paragraph 030207 with the
new manual) of the DODFMR VOL 7A.

If you go to the reference and look at
par 030207.C it states:

ENLISTMENT EXPIRES BEFORE TRIAL.
An enlisted member retained in the

13

> service for the purpose of trial
> by court-martial is not entitled
> to pay for any period after
> expiration of the enlistment
> unless acquitted or the charges
> are dismissed, or the member is
> retained in or restored to a full-
> duty status.
>
>       \*    \*    \*
>
> It is my opinion based on 17 years of
> doing this job, that the Convening Authority
> cannot waive this for six months.  This is
> because unlike a normal case where the
> member's ECC has not expired and they are
> entitled to pay and allowances. [sic]  This
> member is not entitled to anything;
> therefore, nothing can be deferred for six
> months.

After appellant's request to provide monetary benefits for his dependents was rejected, defense counsel submitted a clemency request to the convening authority under RCM 1105. Counsel specifically asked that "all confinement in excess of eighteen months be suspended for one year," and in support of this request, he wrote:

> **Private Smith has lost all pay and
> allowances despite General Ryan's agreement
> to suspend all forfeitures until the C.A.'s
> action and waive all forfeitures for six
> months thereafter.**  In his pretrial
> agreement, Private Smith agreed to plead
> guilty before a military judge and waive all
> motions at trial *in exchange for General
> Ryan's generous agreement to help care for
> his family for a period of time while he was
> in jail.  Caring for his family was Private
> Smith's only concern.*  Private Smith pled
> guilty as required, saving the Government
> the expense of trial.  In addition, he

> provided CID the names of dozens of other drug offenders, some of whom were later caught and convicted. However, because of administrative problems with continuing Private Smith's pay after his EAOS, *all of Private Smith's pay was cut off.* When this happened, the defense protested to the trial counsel, Captain Ed Lee, as well as to the admin shop at MWSS 271. The defense was informed that, despite General Ryan's agreement to continue Private Smith's pay in favor of his children, nothing could be done to reinstate it (see enclosure 4). In short, Private Smith has not received any support for his family since he has been incarcerated, despite General Ryan's apparent intent to prevent significant loss of income to Private Smith's family. If this portion of the pretrial agreement is to have no effect, Private Smith asks that more of his sentence be suspended so that he can provide for his family as soon as possible.

In addition, appellant submitted three handwritten letters to the convening authority requesting a reduction in the period of confinement to expedite his return to his family so he could address their financial and other problems.

The staff judge advocate's recommendation to the convening authority under RCM 1106 acknowledged that defense counsel had submitted a clemency request. The recommendation, however, did not discuss the substance of the request or its relationship to the problems in implementing the pretrial agreement. Instead, despite the fact that appellant had notified the convening authority of the post-trial problems in implementing the pretrial agreement with respect to his pay, the staff judge

advocate erroneously advised the convening authority that the automatic forfeitures went into effect on February 4, 1998.  In addition, the staff judge advocate's recommendation did not accurately describe the deferral and waiver portions of the pretrial agreement.

The convening authority approved the sentence as adjudged, with one modification.  He suspended confinement in excess of thirty-six months for a period of twelve months, with provision for automatic remission.  The thirty-six-month period represented a four-month reduction from the forty-month ceiling in the pretrial agreement.  He indicated that he had considered the results of trial, the record of trial, the recommendation of the staff judge advocate, the evidence in the record related to appellant's record of service, and the post-trial matters submitted by the defense.  Neither his action nor the staff judge advocate's recommendation provided a rationale for the four-month reduction in confinement.  With respect to pay, the convening authority incorrectly treated automatic forfeitures as an element of the sentence, and he perpetuated the staff judge advocate's misunderstanding of appellant's pay situation, erroneously asserting that the automatic forfeitures had commenced on February 4, 1998.

## C.  Court of Criminal Appeals

In the Court of Criminal Appeals, appellant challenged the providence of his pleas, asserting that he had not received the benefit of the pretrial agreement as a result of a misunderstanding as to a material provision.  The Government conceded error and joined in a request that the pleas be treated as improvident.  In a split decision, the Court of Criminal Appeals rejected appellant's contention and the Government's concession.  The majority concluded that appellant's pleas were voluntary, on the theory that he would have entered into the pretrial agreement "regardless of whether his pretrial agreement contained any language concerning the automatic forfeiture of pay."  Unpub. op. at 14.  In the majority's view, the misunderstanding did not result from the language of the pretrial agreement; the provisions concerning pay "most likely predated the existence of the pretrial agreement"; it was likely that the pay provisions in the agreement were initiated by appellant; and it was unlikely that the convening authority initiated or insisted upon those provisions.

The majority concluded that appellant entered into the agreement because he previously had made a confession and because he was facing a maximum sentence of fifty years.  Id. at 14-16.  The majority also noted that the agreement had been signed a month before trial, that the military judge had not

17

discussed the details of the forfeiture provisions with appellant until after appellant had entered his pleas, that during post-trial proceedings, appellant had not asserted that his pleas were improvident, and that appellant had "capitalized" on his no-pay status by seeking a reduction in confinement. Id. at 17-18. Applying these matters in light of the factors set forth in Bedania, supra, the majority concluded "that the appellant's misunderstanding about the collateral consequences of his pretrial agreement was not 'major,'" and that his pleas were not "induced by the trial judge's comments, the trial counsel or the convening authority." Unpub. op. at 18. Nonetheless, because "appellant was not given the entire benefit of his bargain in this case," the majority changed the dishonorable discharge to a bad-conduct discharge and eliminated the suspended period of confinement in excess of thirty-six months. Id. at 19, 21.

The dissent below concluded that the pleas were "improvident based upon a mutual misunderstanding of the parties concerning a material term of the pretrial agreement . . . ." Id. at 21. The dissent noted that the facts, as recited by the majority, demonstrated that "all parties, to include the military judge, misperceived the Government's ability to provide the benefit for which the appellant had negotiated in return for his pleas -- financial support to his family through delivery of

18

the appellant's pay during the initial months of his
confinement. . . . He did not receive th[e] benefit that he and
the Government agreed he would receive in return for his pleas
of guilt." Id. at 21-22 (footnote omitted).

The dissent described the provision regarding pay as
"major" and concluded that "appellant is entitled to succeed on
this issue since misunderstanding of this consequence resulted
'foreseeably and almost inexorably from the language of the
pretrial agreement.'" Id. at 22, quoting Bedania, supra at 376.
The dissent observed that

> the mutual misunderstanding among the
> appellant, the convening authority, his
> staff judge advocate, and the trial counsel
> should have been apparent to the military
> judge. Unfortunately, the military judge
> confirmed during the providence inquiry that
> the appellant would receive the negotiated
> benefit.

Id. (footnote omitted).

According to the dissent, if the military judge had advised
appellant accurately "during the providence inquiry that his pay
would stop when he was confined post-trial, the appellant could
have elected to reject the pretrial agreement and withdraw his
pleas, or he could have elected on the record to continue with
his pleas of guilty." Id. at 21-22 n.1. The dissent added that
a further opportunity "to obtain such an informed waiver was
missed by the staff judge advocate," who could have advised the

convening authority that there was a material misunderstanding, permitting appellant "either to withdraw his guilty pleas or affirm them based on the sentence adjudged or in return for some other specific relief." Id. at 22 n.3. The dissent observed that the staff judge advocate, instead of providing such advice, misadvised the convening authority by erroneously asserting that the automatic forfeitures "went into effect" and "said nothing about the convening authority's obligation to waive them as required by the pretrial agreement." Id. The dissent concluded that, under these circumstances, "appellant's post-trial efforts to receive at least *some* benefit in return for his negotiated pleas [did not amount] to an informed waiver of the error which occurred as a result of the mutual misunderstanding in this case." Id. at 22.

## III.  DISCUSSION

### A. Analysis

In Williams, we observed that "[i]gnorance of the law on a material matter cannot be the prevailing norm in the legal profession or in the court-martial process." 53 MJ at 296. The majority below attempted to distinguish Williams on two grounds: (1) that the accused in Williams had submitted an affidavit asserting that the convening authority's agreement to waive forfeitures was the "only" reason he agreed to plead guilty; and

(2) that unlike the present case, there was no other form of clemency in Williams.  Unpub. op. at 12.  There is no requirement, however, that the term at issue constitute the "only" reason for a pretrial agreement.  Williams, like Hardcastle, is based upon the Supreme Court's decision in Santobello, which applies when "a plea [agreement] rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration . . . ."  404 U.S. at 262 (emphasis added).  Although other factors may help induce a plea -- such as the existence of a confession or the potential for lengthy confinement -- these factors do not negate the materiality of another term that may be "part" of the agreement.

With respect to the lower court's reliance on the convening authority's clemency action, we note that the record is devoid of any indication by the convening authority or his staff judge advocate that the relatively modest clemency provided to appellant was taken to rectify the mutual misunderstanding with respect to the pretrial agreement.  Even after the convening authority's action, appellant was left with a punitive discharge and confinement for thirty-six months, double the amount requested in his clemency submission.  If anything, the record illustrates the command's inattention to the problems in the pretrial agreement, as reflected in the fact that the staff

judge advocate misinformed the convening authority as to appellant's pay status, and that the convening authority acted on that basis.

We note that where there has been a mutual misunderstanding as to a material term, the convening authority and an accused may enter into a written post-trial agreement under which the accused, with the assistance of counsel, makes a knowing, voluntary, and intelligent waiver of his right to contest the providence of his pleas in exchange for an alternative form of relief. The record in the present case, however, reflects no such agreement, nor does it otherwise demonstrate that appellant made an informed waiver of his rights.

In the present case, appellant sought through the pretrial agreement to address his family's financial situation during any period of confinement by providing that adjudged or automatic forfeitures would go to his dependent children. The record demonstrates that all participants in the proceeding -- the convening authority, the staff judge advocate, trial and defense counsel, appellant, and the military judge -- proceeded on the assumption that appellant's pay would provide the basis upon which the forfeiture provisions could be implemented.

As in Williams and Hardcastle, the military judge expressly stated on the record that the provision relating to automatic forfeitures would apply to appellant. Defense counsel offered

22

the view that "the intent of the pretrial agreement . . . is that the money should go to" appellant's ex-wife and his dependent children.  Trial counsel agreed with that understanding and, during his sentencing argument, stated that the Government would not ask for forfeitures, in view of appellant's desire to support his family.  The military judge stated that it was "the understanding of the court" that funds would go to appellant's children as a result of the pretrial agreement, and he stated that "the command will take action to effect that understanding of the pretrial agreement or put it into effect."  Under Williams and Hardcastle, remedial action is required because these circumstances reflect pleas that rest in a significant degree on an agreement with the Government that was a material part of the consideration, and the Government has not fulfilled its part of the agreement.

## B.  Appropriate Relief

Assuming that the bargained-for benefit is outside the authority of the Government to provide, it is necessary to determine whether some "appropriate alternative relief" is available "as an adequate means of providing appellant with the benefit of his bargain."  See Mitchell, 50 MJ at 83.  As in Mitchell, we conclude that the Court of Criminal Appeals is well-situated to consider this question. Id.  If such

"appropriate alternative relief" is available, the court may affirm the findings and so much of the sentence that will reflect this relief.  If not, in the absence of appellant having received his full consideration in return for his pleas of guilty, the court must set aside the findings and sentence and authorize a rehearing.  See Williams and Hardcastle, both supra.

## IV.  DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is set aside.  The record of trial is returned to the Judge Advocate General of the Navy for remand to that court for further proceedings consistent with this opinion.

CRAWFORD, Chief Judge (concurring in part and in the result):

We are once again faced with the unfortunate, if not inexcusable, situation where an accused was beyond his ETS date at trial and, apparently, none of the participants recognized the significance of this important fact.  See United States v. Williams, 53 MJ 293 (2000); United States v. Hardcastle, 53 MJ 299 (2000); United States v. Albert, 30 MJ 331 (CMA 1990).  It would appear to me that when a charge sheet clearly shows that an accused's current date of service began on "5 Nov 93" for a term of "4 years," and the accused's court-martial was held on January 21, 1998, someone should have calculated that the accused was beyond his contractual service obligation.

Appellant ceased to be pay eligible on the date findings and sentence were announced (January 21, 1998).  See Albert, supra at 332, citing 39 Comp. Gen. 42 (1959).  Since there was no pay to suspend, forfeit, defer, or otherwise dispose of, it was impossible for the Government to comply with the pretrial agreement, proposed by appellant and his counsel but nonetheless accepted by the convening authority.

During the six months it took to type, assemble, and authenticate appellant's 100-page guilty plea record of trial (June 17, 1998), and the ensuing five months it took to prepare a four-page staff judge advocate's recommendation (November 25,

1998), someone discovered that appellant's pay had stopped on January 21, 1998, the date of his court-martial.

The real issue in this case, as it is in all cases where an appellant alleges that he did not receive all for which he bargained, is whether this appellant understandingly, voluntarily, and intelligently entered into his pretrial agreement. See Brady v. United States, 397 U.S. 742, 747-48 and n.4 (1970); RCM 705(c)(1)(A), Manual for Courts-Martial, United States (2000 ed.). Guilty pleas that are induced by false promises, threats, and misrepresentations fail, but those plea bargains that are otherwise voluntarily made or based on a non-substantial misunderstanding of the sentence will stand. See Williams, 53 MJ at 297 (Crawford, C.J., concurring in the result).

This case is closely related to, but not squarely on point with, recent pronouncements from this Court. Unlike the majority below, I do find a meaningful distinction between this case and Albert. In Albert, the convening authority did exactly what he promised to do in the pretrial agreement. There, the pretrial agreement provided that the convening authority would, inter alia, suspend "all forfeitures in excess of $250 pay per month for ... 1 year." 30 MJ at 331. However, Albert was beyond his ETS date and not entitled to any money. Although the pretrial agreement provided for a suspension of forfeitures that

2

actually provided no relief to the accused, we held that Albert was not entitled to relief because his unilateral misunderstanding was not induced by a representation of the military judge, trial counsel, or convening authority.  30 MJ at 333; see ___ MJ at (5)(majority opinion); see also United States v. Williams, 55 MJ 302, 307 (2001)(no entitlement to relief where there was no representation by the convening authority, military judge, or trial counsel that Williams's pay would continue beyond his ETS while in confinement).

Without more, this case would be controlled by our holding in Albert.  As noted by the dissent below, the military judge changed the posture of this case when he informed appellant that appellant would receive the benefit of his pretrial agreement. I remain convinced that the fact that appellant was facing a maximum term of fifty years confinement had more persuasive impact on his desire to negotiate a pretrial agreement then did his altruistic wish to secure medical benefits for his family members.  Nonetheless, appellant's desire to avoid the collateral consequences associated with his forfeiture of pay may have been a material element of the pretrial agreement. Accordingly, I agree with the majority that the remedy in this case is either specific performance, appropriate alternative relief, or an opportunity to withdraw from the plea agreement. See Santobello v. New York, 404 U.S. 257, 262-63 (1971); see

also <u>United States v. Mitchell</u>, 50 MJ 79 (1999); <u>United States</u>

<u>v. Olson</u>, 25 MJ 293 (CMA 1987); <u>United States v. Bedania</u>, 12 MJ

373 (CMA 1982).

As Judge Naugle points out in dissent below, the staff judge advocate and convening authority missed a golden opportunity to rectify any mutual misunderstanding.  In his request for clemency, appellant asked the convening authority to suspend all confinement in excess of eighteen months for one year and to approve a discharge no greater than a bad-conduct discharge.  First and foremost among the reasons for this request and counter-offer was the Government's inability to fulfill that part of the pretrial agreement waiving forfeitures in favor of appellant's family members.

Using the principles of accord and satisfaction as a model, the convening authority would have extinguished this appellate issue by accepting appellant's accord and satisfying him by approving no confinement greater than eighteen months and a bad-conduct discharge.  Unlike the majority, I do not see the necessity for a newly "written post-trial agreement." ___ MJ at (22).  In my opinion, appellant could be made whole by approving no greater than a bad-conduct discharge, eighteen months confinement, and paying appellant for the number of months he spent in confinement in excess of eighteen.

Nonetheless, I concur that the Courts of Criminal Appeals are the experts at applying service regulations, to include pay manuals, and are best situated to determine what appropriate relief is available to compensate an appellant and provide him with the benefits for which he bargained pretrial. Accordingly, I join in remanding this case to the Navy-Marine Corps Court of Criminal Appeals for further proceedings.