CRAWFORD, Chief Judge
(dissenting):
The majority allows Appellant to withdraw from his pretrial agreement even though he received everything he bargained for. In doing so, the majority focuses on what Appellant says were his personal reasons for entering into the agreement. The majority does not, as it should, limit itself to identifying and enforcing the terms of the agreement Appellant and the convening authority actually reached. The end result contravenes strong public policy and well established federal case law. For these reasons, I respectfully dissent.
In Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Supreme Court recognized that plea agreements are “essential” to criminal justice, are “highly desirable,” and must be “encouraged.” Id. at 260-61, 92 S.Ct. 495. This is because such agreements
lead[ ] to prompt and largely final disposition of most criminal cases; ... avoid[ ] much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; ... protect[ ] the public from those accused persons who are prone to continue *87 criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, ... enhance[ ] whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned.
Id. at 261, 92 S.Ct. 495. As we also have stated:
There are numerous benefits to pleading guilty [in accordance with a plea agreement]. A plea of guilty ensures the prompt application of correctional measures; avoids delays; amounts to an acknowledgement of guilt and acceptance of responsibility; and avoids the risks of a contested trial. Guilty pleas also help preserve limited resources and relieve the victimas] of the trauma of testifying.
United States v. Forester, 48 M.J. 1, 3 (C.A.A.F.1998)(footnote omitted).
Thus, the benefits of plea agreements inure not only to defendants, but also to society, and the interests of both must be taken into account when deciding how best to remedy the Government’s breach of a plea agreement. As a result, even though a defendant waives fundamental constitutional rights when he or she pleads guilty,[1] the Supreme Court has made clear that the Government’s breach of a plea agreement does not entitle a defendant to withdraw from the agreement if the breach can be remedied by specific performance.
In Santobello, as part of a plea bargain, the prosecutor agreed to make no sentence recommendation. That promise was breached, however, when another prosecutor in the ease, unaware of his predecessor’s promise, recommended the maximum sentence. Defense counsel immediately objected, but to no avail, and the trial judge imposed the maximum sentence. On these facts, the Supreme Court held Santobello was entitled to relief, but left to the discretion of the state court
whether the circumstances of this case require only that there be specific performance of the agreement on the plea, ... or whether, in the view of the state court, the circumstances require granting the relief sought by [Santobello], ie., the opportunity to withdraw his plea of guilty.
404 U.S. at 263, 92 S.Ct. 495 (footnote omitted).
The import of this language is clear. Even if a defendant requests to withdraw from a plea agreement that has been breached, specific performance of the agreement, when possible, should be the remedy. See United States v. Gilchrist, 130 F.3d 1131, 1134 (3d Cir.1997)(“[T]he district court, not the defendant, is to decide in the first instance whether to grant specific performance of the plea agreement or withdrawal of the guilty plea.”); Peavy v. United States, 31 F.3d 1341, 1346 (6th Cir.1994)(“The choice between these remedies is not up to the defendant but, rather, rests in the sound discretion of the district court.”); Kingsley v. United States, 968 F.2d 109, 113 (1st Cir.1992)(“The choice between these two remedies is not up to the defendant; rather, it rests with the court____ Specific performance, the less extreme remedy, is preferred.”) (emphasis added); United States v. Tobon-Hernandez, 845 F.2d 277, 280-81 (11th Cir.1988)(“Santobello did not hold that a defendant’s choice of remedy for a breach of a plea agreement was binding on the court. Rather, the remedy for a breach of a plea agreement is within the sound discretion of the court.”).
Therefore, the question becomes: Is specific performance of the breached promise in Appellant’s case possible? And the answer to that is yes.
At the outset, it is important to note what the breached promise was — and what it was not. It was not the type of breached promise found in almost every post-Santobello federal case dealing with this subject, i.e. - a promise by a prosecutor to make or refrain from making a sentence recommendation to the trial judge, to dismiss certain charges, to reduce certain charges, or not to prosecute certain offenses. See Jay M. Zitter, Choice *88 of Remedies Where Federal Prosecutor has Breached Plea Bargain — Post-Santobello v. New York, 120 A.L.R. Fed. 501 (1994 & 2002 Supp.). Instead, it was a promise unique to the military justice system, i.e. — a promise to pay a sum of money.
In the military, a court-martial sentence that includes more than six months’ confinement or a punitive discharge results in the automatic forfeiture of pay and allowances due a servicemember during confinement. See Art. 58b(a)(2002), Uniform Code of Military Justice, 10 U.S.C. § 858b(a). However, the convening authority (the person who enters into a plea agreement with an accused)[2] may waive these forfeitures for six months and pay them to the dependents of an accused. See Art. 58b(b). Significantly, there is no requirement that the money be used for any particular purpose. Nor is there any accounting or monitoring system in place to determine how the money is used. Consequently, while the money certainly can be used for support and necessities, it also can be used for many other things.
Given these possibilities, and absent any evidence in the record compelling a different result, this Court should not read into the agreement between Appellant and the convening authority anything more than what its express, unambiguous terms provide for— the payment of a sum of money. Plea agreements are contracts, and the terms of those contracts are ascertained using general principles of contract law. United States v. Acevedo, 50 M.J. 169, 172 (C.A.A.F.1999). Two of those principles are as follows:
When the terms of a contract are unambiguous, the intent of the parties is discerned from the four corners of the contract. See United States v. Liranzo, 944 F.2d 73, 77 (2d Cir.1991). When the contract is ambiguous on its face because a provision is open to more than one interpretation, extrinsic evidence is admissible to determine the meaning of the ambiguous term. See United States v. Ingram, 979 F.2d 1179, 1184 (7th Cir.1992), cert, denied, 507 U.S. 997 ..., 113 S.Ct. 1616, 123 L.Ed.2d 176 (1993).
Id.; see also United States v. Nunez, 223 F.3d 956, 958 (9th Cir.2000).
In Appellant’s case, the terms of the agreement (“waive any or all forfeitures and pay the dependents of the accused”) are unambiguous. Moreover, nothing else in the agreement, or the discussion of the agreement on the record, suggests any particular reason why the parties agreed on the payments, or any agreement between them as to what the money could, or could not, be used for. Cf. Kingsley, 968 F.2d at 111-12,114-15 (discussion on the record between trial judge, prosecutor, and defense counsel supplied additional meaning to written terms of pretrial agreement). As a result, nothing supports a limiting interpretation of this agreement that one of the mutually agreed upon terms was “time was of the essence” in the payment of the money.[3]
This ease is not about what Congress intended when it enacted Article 58b(b); and it is not about what personal reasons may have motivated Appellant to enter into his pretrial agreement. This case is about what both appellant and the convening authority mutually intended and actually agreed to, and about enforcing that agreement as a matter of good social policy. That said, there is nothing in the unambiguous terms of the written agreement, or anywhere else, that suggests the convening authority was made aware of, understood, and agreed that Appellant had a particular, immediate use to which he wanted to put the money, and that the agreement would fail if the money was not immediately paid. See United States v. Burns, 160 F.3d 82, 83 (1st Cir.1998)(“[S]ignificant plea-agreement terms should be stated explicitly and unambiguously so as to preclude their subsequent circumvention by either party.”).[4]
*89 Thus, the mutually agreed upon promise in this case was nothing more than payment of a sum of money, and specific performance of that unique promise was properly accomplished through alternative means when (1) the convening authority disapproved the sentence to confinement, resulting in a payment to Appellant of $3,184.90, and (2) the Court of Criminal Appeals set aside the sentence of reduction to E-3, which, if affirmed by this Court, “will allow for payment of additional money as a substitute for interest.” 57 M.J. at 599 (relying on United States v. Mitchell, 50 M.J. 79, 82-83 (C.A.A.F.1999), and United States v. Olson, 25 M.J. 293, 298-99 (C.M.A. 1987)).
The lower court’s reliance on Mitchell was well placed. Mitchell, and this Court’s most recent decision in United States v. Smith, 56 M.J. 271 (C.A.A.F.2002), are controlling.[5] In each, as in this case, the convening authority and the appellant entered into a pretrial agreement where the convening authority agreed to waive automatic forfeitures and pay the money to the appellant’s dependents. In each, as in this case, the convening authority could not fulfill that promise because the appellant was not entitled to pay during the period of his confinement. And in each, this Court allowed the lower court to “determine whether some ‘appropriate alternative relief [was] available ‘as an adequate means of providing [the] appellant with the benefit of his bargain.’ ” Id. at 279 (quoting Mitchell, 50 M.J. at 83). Failing that, of course, the appellant could withdraw his pleas of guilty.
There is no reason why the result in Appellant’s case should be any different. The one fact distinguishing this case from Mitchell and Smith is that Appellant states the only remedy that will satisfy him is withdrawal of his pleas, whereas the appellants in Mitchell and Smith were silent in that regard. But that is a distinction without a difference, because the law is abundantly clear — the choice of remedy rests with the courts, and the fact an otherwise appropriate remedy is not an appellant’s remedy of choice does not compel a different result, because it does not offend due process in light of society’s compelling interest in supporting and enforcing plea agreements. See Santobello, Gilchrist, Peavy, Kingsley, and Tobon-Hemandez, all supra.
This case should be affirmed.

. By pleading guilty, a defendant waives the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one’s accusers. See Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

. See Rule for Courts-Martial 705(a).

. See generally John D. Calamari & Joseph M. Perillo, The Law of Contracts 414-16 (4th ed. 1998)(only when time is of the essence does delay constitute a material breach).

. I note that the pretrial agreement did state it would terminate in a variety of other situations, demonstrating that when Appellant and the convening authority agreed to such a condition, they included it in their agreement.

. This Court’s decisions in United States v. Williams, 53 M.J. 293 (C.A.A.F.2000), and United States v. Hardcastle, 53 M.J. 299 (C.A.A.F.2000), are not controlling. In each, the convening authority, through government appellate counsel, agreed to the appellant’s withdrawal of his pleas as a remedy for the convening authority’s breach. No such concession exists here.