# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————

## No. 201600012

———————————

## UNITED STATES OF AMERICA
Appellee

v.

## JONATHAN A. DODD
Fire Controlman First Class (E-6), U.S. Navy
Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Captain David M. Harrison, JAGC, USN.
For Appellant: Major Jason L. Morris, USMCR.
For Appellee: Lieutenant Commander Jeremy R. Brooks, JAGC, USN; Captain Cory Carver, USMC.

———————————

Decided 16 August 2016

———————————

Before FISCHER, PALMER, and CAMPBELL, *Appellate Military Judges*

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————

CAMPBELL, Judge:

At a general court-martial, the appellant pleaded guilty and was convicted of possessing child pornography during 2012 and 2013 in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. A military judge sentenced the appellant to eight years' confinement, reduction to pay grade E-1, total forfeiture of pay and allowances, and a dishonorable discharge.

In accordance with a pretrial agreement (PTA), the convening authority approved but commuted the dishonorable discharge to a bad-conduct discharge, approved but suspended confinement in excess of 12 months for a

period of 12 months, and approved the reduction to pay grade E-1. The convening authority also approved and purported to effectuate negotiated protections against the execution of some adjudged and automatic forfeitures. Specifically, the convening authority suspended adjudged forfeitures in excess of $1,044.00 pay per month for a period of 12 months, and waived automatic forfeitures in excess of $1,044.00 pay per month "for the remaining period of time that the [appellant] is in confinement."[1]

After the case was submitted without an assignment of error, we specified two issues: (1) whether a mutual misunderstanding of the PTA's material terms about automatic and adjudged forfeitures resulted in improvident pleas given the appellant's lack of pay entitlements during confinement after his end of active obligated service (EAOS) date; and (2) if so, whether some appropriate alternative relief is available as an adequate means of providing him with the benefit of his bargain. We find that the parties mutually misunderstood material PTA terms and, with the agreement of the parties, take corrective action in the decretal paragraph.

## I. BACKGROUND

After his arraignment and pretrial motions, the appellant, his civilian defense counsel (CDC), and his detailed military defense counsel signed the two parts of his PTA offer, on 25 August 2015, and submitted it for the convening authority's consideration.[2] The convening authority approved the offer a week later, on 1 September 2015.[3] The parties agreed upon the following sentence limitation terms regarding potential forfeitures:

> a. Adjudged Forfeitures:  Adjudged forfeitures in excess of two-thirds (2/3) pay per month for twelve (12) months will be disapproved.
> b. Automatic Forfeitures: Automatic forfeitures in excess of two-thirds (2/3) pay per month for twelve (12) months will be deferred until the taking of Action by the convening authority, and upon taking of Action, will thereafter be waived by the

---

[1] Commander, U.S. Naval Forces Japan General Court-Martial Order No. 5-15 of 11 Jan 2016 at 3. As the appellant served no pretrial confinement, and the military judge awarded no confinement credit, the appellant's confinement commenced on the date he was sentenced, 17 November 2016.

[2] Appellate Exhibits XIV and XV. Despite its heading as the "MEMORANDUM OF PRETRIAL AGREEMENT (Part II)," AE XV contains all of the sentence limitation portions of the agreement.

[3] AE XIV at 7; AE XV at 2.

convening authority for the remaining period of time that the accused is in confinement.[4]

The appellant's entitlement to E-6 pay did not change pending his guilty plea, which occurred on 17 November 2015—the trial date originally set at arraignment. After the providence inquiry, but before accepting the appellant's plea or reviewing the first part of his PTA, the military judge initially advised him:

> It appears from the charge sheet that your EAOS, end of active obligated service, will be 8 December of this year. . . . Now if you were sentenced to a period of confinement and your end of active obligated service date arrives while you are serving confinement as part of your sentence, then all of your military pay and allowances will stop on your EAOS date regardless of the terms of your pretrial agreement.[5]

Next, addressing automatic punishments generally, the military judge further advised:

> Additionally, there are automatic consequences of your sentence that may affect your pay and allowances and reduce you in paygrade. I want to discuss those automatic consequences briefly with you to ensure you understand them. First, if your sentence includes either a punitive discharge or confinement or confinement in excess of six months, the law requires the automatic forfeiture of all pay and allowances during any period of confinement. That automatic forfeiture occurs whether the sentence is suspended or not unless the convening authority takes action to stop or delay the forfeitures. . . . Secondly, if the approved sentence includes a punitive discharge or confinement in excess of 90 days, the law requires you to be administratively reduced to the paygrade of E-1. Again, this reduction would occur automatically unless the convening authority takes action to stop or suspend it.[6]

Hours later, after announcing the sentence, the military judge reviewed Part II of the PTA and explained its impact on the appellant's punishments:

> MJ: . . . All adjudged forfeitures. This court awarded forfeiture of all pay and allowances. Anything in excess of two-thirds pay will be disapproved, meaning the convening authority will only

---

[4] AE XV at 1.

[5] Record at 128-29.

[6] *Id.* at 130-31.

approve a two-thirds pay per month for a period of 12 months. Forfeiture, automatic forfeitures, also at the two-thirds pay per month for 12 months will be deferred as set forth therein, and your reduction to E-1 may be approved as adjudged. Do counsel agree with the court's interpretation of the pretrial agreement, Part II of the pretrial agreement?

TC: The government agrees, Your Honor.

CDC: The defense agrees, sir.

MJ: [Appellant], is that also your understanding of the sentence limitation portion of your pretrial agreement?

ACC: Yes, sir.

MJ: Do you have any questions about the effect that Part II of your pretrial agreement, that it has on the sentence adjudged by this court?

ACC: No, sir.[7]

On 16 December 2015, the appellant's military trial defense counsel submitted a clemency request. It asked the convening authority to suspend all confinement in excess of six months based upon the appellant's extraordinary family circumstances and his need to financially support his wife and children:

As was discussed [by the appellant at trial], his children will likely have to return to China to be raised by their grandparents while [his] wife tries to establish a home in America. [His] wife is a stay-at-home mother who will have an extremely difficult time finding employment in the United States [with] only a limited understanding of the English language . . . .[8]

The 28 December 2015 staff judge advocate's recommendation (SJAR) advised the convening authority that the appellant was "entitled to the agreed-upon benefits" of the PTA.[9] To its recitation of the PTA forfeiture provisions, it added only that, "[a]lthough not stated in the [PTA], both parties understand that this [two-thirds pay per month] amount will be stated in whole dollar amounts in the Convening Authority's Action."[10]

---

[7] *Id.* at 217-18.

[8] Clemency Request of 16 Dec 2015 at 1.

[9] SJAR at 1.

[10] *Id.* at 2.

4

Regarding "[r]equests for [d]eferment," the SJAR indicated, "[t]here are no requests either as adjudged or as mandated under the UCMJ."[11]

## II. DISCUSSION

Interpretation of a PTA's meaning and effect is a question of law that we review *de novo*. *United States v. Smead*, 68 M.J. 44, 59 (C.A.A.F. 2009). An appellant's pleas are improvident when a mutual misunderstanding about a material PTA term results in him not receiving the benefit of the bargain. *United States v. Perron*, 58 M.J. 78, 82 (C.A.A.F. 2003) (citing *United States v. Hardcastle*, 53 M.J. 299, 302 (C.A.A.F. 2000); *United States v. Williams*, 53 M.J. 293, 296 (C.A.A.F. 2000)). Therefore, a guilty plea may be withdrawn when a court-martial's "collateral consequences are major and the appellant's misunderstanding of the consequences (a) results foreseeably and almost inexorably from the language of a pretrial agreement; (b) is induced by the trial judge's comments during the providence inquiry; or (c) is made readily apparent to the judge, who nonetheless fails to correct that misunderstanding. *United States v. Bedania*, 12 M.J. 373, 376 (C.M.A. 1982).

"[I]t is the military judge's 'responsibility to police the terms of [PTAs] to insure compliance with statutory and decisional law as well as adherence to basic notions of fundamental fairness.'" *United States v. Soto*, 69 M.J. 304, 307 (C.A.A.F. 2011) (quoting *United States v. Partin*, 7 M.J. 409, 412 (C.M.A. 1979)). "To ensure that the record reflects the accused understands the [PTA] and that both the Government and the accused agree to its terms, the military judge must ascertain the understanding of each party during the inquiry into the providence of the plea." *United States v. Smith*, 56 M.J. 271, 272-73 (C.A.A.F. 2002) (citations omitted). *See also* RULE FOR COURTS-MARTIAL 910(f), MANUAL FOR COURTS MARTIAL, UNITED STATES (2012 ed.). While R.C.M. 910(h)(3) requires only that the military judge "inquire into any parts of a [PTA] which were not previously examined" after announcing the sentence, the ultimate requirement is that the military judge "address the parties' understanding of any limitations on the sentence in order to assure that there is a mutual agreement." *Smith*, 56 M.J. at 273 (citations omitted).

### A. Mutual misunderstanding of material PTA terms

As a predicate matter, we must determine if the negotiated forfeiture protections are material terms of the agreement. It is clear that the appellant specifically bargained for provisions that would spare at least one-third of his pay from forfeitures, no matter the ultimate sentence. While the parties did not specify an actual dollar amount, these PTA terms are undeniably beneficial for the appellant, with expected consequences amounting to several thousands of dollars in pay. The extenuation and mitigation evidence,

---

[11] *Id.* at 3.

5

including his unsworn statement, as well as the post-trial clemency request, indicate that significant concern about his family's dire financial situation being exacerbated by the court-martial motivated the appellant's actions during the trial. Thus we have little difficulty concluding that the forfeiture protection terms are material. *See United States v. Moore*, No. 200000603, 2000 CCA LEXIS 206, at *8, unpublished op. (N-M. Ct. Crim. App. 15 Sep 2000) (finding that a "limitation on forfeitures was a material factor inducing him to enter into a PTA and plead guilty[,]" where it was "evident from the record," including post-trial clemency submissions, "that the appellant intended to negotiate an assurance from the Government that his dependent children would receive a fixed amount of financial support from his pay for a specified period of time while he served out his sentence").

1. *Foreseeable and almost inexorable conclusions from the PTA language*

The first specified issue focuses on whether the parties failed to appreciate the consequences of pay entitlements ending at the appellant's EAOS and thus mistakenly believed that the PTA ensured the appellant's family would receive a portion of his pay during each month of confinement. But viewed more broadly, wholly apart from the EAOS aspect, the forfeiture provisions include obvious internal timing inconsistencies (at odds with obvious efforts to ensure an uninterrupted money flow) and a purported requirement for the convening authority to exceed his lawful ability to waive automatic forfeitures.

First, contrary to the SJAR's indications, the PTA terms constituted a request, and an agreement, to defer automatic forfeitures until the date the convening authority approved the sentence. *See* Art. 58b, UCMJ; Art. 57, UCMJ. However, adjudged total forfeitures, not deferred by a PTA, begin 14 days after sentencing. Art. 57, UCMJ. So despite the automatic forfeiture deferment, all of the appellant's pay would stop due to Article 57 even before he reached his EAOS.

Second, pursuant to Article 58b(b), UCMJ, automatic forfeitures may be waived for the benefit of an accused's dependents, "for a period not to exceed six months." Nonetheless, the appellant's PTA contemplates that "automatic forfeitures in excess of two-thirds (2/3) pay per month *for twelve (12) months* [would] be waived by the convening authority *for the remaining period of time that the accused is in confinement.*"[12] In light of the appellant's confinement beginning only after the trial, on 17 November 2015, and the convening authority's requirement to suspend only confinement in excess of 12 months, clearly the appellant's anticipated release from confinement date was well over six months from when the convening authority's action reasonably

---

[12] AE XV at 1 (emphasis added).

would be completed.[13] Yet the SJAR made no reference to the maximum waiver period for automatic forfeitures under Article 58b. Citing only the need to state any portions of total forfeitures in whole dollar amounts, the SJAR instead quoted the PTA's waiver period as part of the "agreed-upon benefits" to which the appellant "is entitled."[14] Consequently, the convening authority's action stated, "Pursuant to the pre-trial agreement, automatic forfeitures in excess of $1,044.00 pay per month *for 12 months* will be waived *for the remaining period of time that the accused is in confinement*."[15]

The treatment that the appellant, prosecutor, civilian and military trial defense counsel, staff judge advocate, and convening authority gave to these terms in crafting the PTA, and how they approached the forfeiture protections in the post-trial documents, collectively demonstrates significant misunderstandings about forfeiture protections, even independent of the EAOS aspect.

We are also convinced that the related misunderstanding of a major collateral consequence of the appellant's court-martial—losing pay entitlements during post-trial confinement beyond his EAOS—resulted foreseeably and almost inexorably from this PTA language. Losing pay entitlements is simply incongruent with the unique forfeiture protections specifically negotiated to cover the entire time the appellant spent in confinement. More than implying, the PTA unambiguously stated that a portion of the appellant's pay would not be forfeited while he was confined for up to a year. Neither the clemency request, SJAR, nor convening authority's action acknowledged how the negotiated waiver of automatic forfeitures and disapproval of adjudged forfeiture (as well as the convening authority's unilateral decision to suspend rather than disapprove a portion of the adjudged forfeitures from the date of his action) became simply an illusory promise by the Government with the appellant's EAOS just 22 days after trial. Instead, the convening authority's action, following the SJAR, gave the appearance of meaningful performance on forfeiture protections by unambiguously ordering that a portion of the appellant's pay not be forfeited each month during the entire time he remained confined.

*2. Readily apparent mutual misunderstanding not corrected at trial*

Furthermore, the misunderstanding was made readily apparent to the judge, who did not correct it. In arguing that there was no mutual misunderstanding of material PTA terms, the Government relies, in part, on

---

[13] The military judge authenticated the record of trial on 11 December 2015. Record at 220.

[14] SJAR at 1.

[15] General Court-Martial Order No. 5-15 at 3 (emphasis added).

the military judge initially advising the "[a]ppellant that all his pay and allowances would terminate at his EAOS despite any terms of his [PTA],"[16] that the "[a]ppellant stated he understood,"[17] and that "nobody, including the Military Judge, the Trial Counsel, the Defense Counsel nor the Convening Authority[,] told him that he would receive pay beyond his EAOS."[18] However, the appellant asserts that his "understanding of the terms of the [PTA] when [he] entered into it was that it protected [him] from adjudged and automatic forfeitures . . . [beyond] special court-martial-type punishment."[19]

We find no indication that any of the parties contemplated the impact of the appellant's EAOS on the forfeiture protections during PTA negotiations—completed months before the guilty plea—or at any point before the military judge's EAOS comments at the trial. Such an understanding is neither memorialized within either part of the PTA, nor is it reflected in the plain language of the forfeiture provisions themselves. *Cf. United States v. Jackson*, No. 201200475, 2013 CCA LEXIS 475, at \*3, 7-8 (N-M. Ct. Crim. App. 30 May 2013) (per curiam) (finding no mutual misunderstanding when a PTA deferring automatic forfeitures for six months also contained written acknowledgement of the appellant's "understanding that if 'held in confinement beyond [his EAOS that he would] not receive any pay or allowances by operation of law, regardless of the terms of this [PTA].") (first alteration in original). Instead, the PTA terms here gave the impression to all parties that a portion of the adjudged forfeitures would be disapproved, and a portion of automatic forfeitures would be deferred and then waived while the appellant served confinement after trial.

Knowing that the appellant had no confinement credit and was merely three weeks from reaching his EAOS put the military judge here in a position to address and correct the misunderstanding. Yet, he never connected the pending EAOS consequences to the forfeiture provisions after announcing the sentence. *Cf. Jackson*, 2013 CCA LEXIS at \*4, 8 (finding no mutual misunderstanding where, after directing appellant's attention to his PTA's automatic forfeiture provision, the military judge noted he was past his [EAOS]' and that 'under operation of law you will not be entitled to any pay anyway during that period. . . , [S]o this provision of your pretrial agreement will also have no effect"). To the contrary, the military judge's explanation of

---

[16] Answer on Behalf of Appellee of 7 Jul 2016 at 13.

[17] *Id.*

[18] *Id.* at 12.

[19] Appellant's Motion to Attach Document filed on 8 Jun 2016, Appellant's Declaration of 26 May 2016 at paragraphs 4-5.

the PTA's impact on the sentence in our case further reinforced the understanding that the convening authority was obligated to defer and waive a portion of the automatic forfeitures and disapprove a portion of the adjudged forfeitures as stated in the PTA. Where, as here, the "military judge expressly stated on the record that the provision" in the PTA "relating to automatic forfeitures would in fact apply" to the appellant, "'remedial action is required.'" *United States v. McCall*, No. NMCCA 201200461, 2013 CCA LEXIS 471, at *6-7 (N-M Ct. Crim. App. 30 May 2013) (per curiam) (quoting *Smith*, 56 M.J at 279).

## B. Remedy

Despite our having found that the Government did not, and could not, comply with a material PTA term, the appellant, nonetheless, "'is entitled to the benefit of any bargain on which his guilty plea was premised.'" *Smith*, 56 M.J. at 272 (quoting *Bedania*, 12 M.J. at 375)). When specific performance is not possible, "[a]n appellate court may determine that alternatives to specific performance or withdrawal of a plea could provide an appellant with the benefit of his or her bargain," provided the appellant accepts the alternate remedy. *Perron*, 58 M.J. at 86.

So we consider whether the alternative relief suggested by the parties is an appropriate and adequate means of providing the appellant with the benefit of his bargain here. When there is an "agreement by the parties as to the proper remedy" for the "mutual misunderstanding" that "result[ed] in an accused not receiving the benefit of his bargain," we may "take remedial action in our decretal paragraph consistent with the requests of both the appellant and the Government." *United States v. Johnson*, No. 200501043, 2006 CCA LEXIS 325, at *19-21, unpublished op. (N-M. Ct. Crim. App. 6 Dec 2006) (citations omitted).

In response to the specified issues, instead of seeking to withdraw his guilty plea, the appellant initially requested relief in the form of "suspending adjudged reduction in rank and waiving automatic reduction in rank for 51 days following the convening authority's action, and suspending all adjudged confinement following his action."[20] In the alternative, the appellant requested "that all remaining confinement from the date of this brief be suspended in order to allow him to seek gainful employment to provide for his wife and children, which, at base, was the purpose for seeking relief from forfeitures."[21]

---

[20] Appellant's Brief and Assignments of Error of 26 May 2016 at 13.

[21] *Id*. at 16.

The Government maintains that there was no mutual misunderstanding of material PTA terms and that the appellant received the benefit of his bargain in protection from applicable forfeitures. But should we find otherwise, the Government agrees that alternative relief is appropriate. Citing our inability to suspend punishment, the Government "in consultation with the Convening Authority, proposes that the adjudged reduction in rank be disapproved and confinement in excess of that already served as of the date of this Court's action be disapproved" instead of granting the appellant's requested relief.[22] The appellant now requests that we "approve the potential alternative relief proposed by the Government in its Answer."[23]

Having the parties' agreement as to a proper remedy, we take our remedial action consistent with their agreement.

### III. CONCLUSION

The findings are affirmed. Only so much of the approved sentence as provides for confinement for 274 days and a bad-conduct discharge is affirmed.

Senior Judge FISCHER and Senior Judge PALMER concur.

For the Court



R.H. TROIDL
Clerk of Court

---

[22] Appellee's Answer at 14.

[23] Reply on Behalf of Appellant of 1 Aug 2016 at 3.