# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39423**

———————————

### UNITED STATES
*Appellee*

**v.**

### David M. LAMICA
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 14 June 2019

———————————

*Military Judge:* Joseph S. Imburgia.

*Approved sentence:* Dishonorable discharge, confinement for 20 months, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 14 November 2017 by GCM convened at Moody Air Force Base, Georgia.

*For Appellant:* Major Todd M. Swensen, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Michael T. Bunnell, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, DENNIS, and LEWIS, *Appellate Military Judges*.

Judge DENNIS delivered the opinion of the court, in which Senior Judge JOHNSON and Judge LEWIS joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

DENNIS, Judge:

A general court-martial consisting of a military judge sitting alone convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement, of one specification of conspiracy to commit larceny, one specification of

violation of a lawful general regulation, and one specification of larceny of military property in violation of Articles 81, 92, and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 892, 921.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for 30 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. In accordance with the pretrial agreement, the convening authority approved confinement for only 20 months, but otherwise approved the sentence as adjudged.

Appellant raises four issues on appeal: (1) whether the military judge abused his discretion in accepting Appellant's guilty plea to the larceny charge by failing to establish a sufficient factual basis that the United States Air Force was the victim; (2) whether Appellant's conviction for larceny was legally sufficient; (3) whether the staff judge advocate's recommendation (SJAR) and addendum failed to provide accurate and proper advice to the convening authority regarding the convening authority's clemency powers under Article 60, UCMJ, 10 U.S.C. § 860; and (4) whether, in light of *United States v. Robinson*, 78 M.J. 578 (A.F. Ct. Crim. App. 2018), this court should set aside Appellant's findings and sentence because he did not freely and voluntarily enter into his pretrial agreement. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant, while serving as the noncommissioned officer in charge of the 41st Rescue Squadron at Moody Air Force Base, was assigned the responsibility of ensuring the unit had all the items it needed for an upcoming deployment. In order to fulfill this responsibility, Appellant was detailed as a Government Purchase Card (GPC) account holder. He was required to undergo training and attest to his understanding regarding the appropriate use of his GPC. Almost immediately upon his selection for this assignment, Appellant began conspiring to take personal advantage of the Air Force's fiscal trust.

While awaiting the arrival of his GPC, Appellant informed another GPC account holder from his unit that the unit's all-terrain vehicles (ATVs) were in need of repair. Based on Appellant's recommendation, the unit obtained a new contractor, MudBuggies, to service the ATVs. Unbeknownst to the unit, Appellant, his wife,[2] and the owner of MudBuggies had previously made an agreement to steal tens of thousands of dollars from the Air Force by exploiting the Air Force's contractual relationship with MudBuggies. In exchange for Appellant securing the Air Force contract with MudBuggies, MudBuggies paid Ap-

---

[1] All references in this opinion to the Uniform Code of Military Justice and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] Appellant and his wife had divorced by the time of trial.

pellant and his wife $3,000. As part of their agreement, MudBuggies consistently overcharged the Air Force for services rendered and fraudulently charged the Air Force for items it never delivered. MudBuggies also charged the Air Force for upgrades to Appellant's and his wife's personal vehicles. Over the course of approximately three months, Appellant, his wife, and MudBuggies stole more than $35,000 from the Air Force through their conspiracy.

Appellant eventually received two GPCs and immediately put them to personal use. Appellant made two types of purchases using his GPCs. Some of the purchases were for items Appellant could have legitimately purchased for deployment—like the .22 caliber pistol he purchased—but intended to (and ultimately did) keep for himself. Other purchases were for items which would serve the unit no purpose—like the swimwear he purchased for his wife. To conceal his purchase of unauthorized items, Appellant altered the receipts so that the approving officials would not see an itemized list of items. Within a month of receiving his GPCs, Appellant used them to steal more than $26,000 worth of goods from the Air Force.

## II. DISCUSSION

### A. Appellant's Conviction for Larceny

Appellant asks us to set aside his conviction for larceny on two bases: (1) the military judge abused his discretion in accepting Appellant's plea; and (2) his conviction for larceny was legally insufficient. We do not address Appellant's allegation that his conviction is legally insufficient since by his plea of guilty to larceny, Appellant's conviction "must be analyzed in terms of providence of his plea, not sufficiency of the evidence." *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996). We find that Appellant entered a provident plea and the military judge did not abuse his discretion in accepting it.

#### 1. Additional Background

Appellant pleaded guilty to stealing military property from the United States Air Force of a value more than $500.00. As is customary in military courts-martial, the military judge first explained the elements and definitions of the offense of larceny to Appellant and then asked Appellant a number of detailed questions to determine whether to accept Appellant's plea of guilty. After defining military property as "real or personal property owned, held or used by one of the armed forces of the United States which either has a uniquely military nature or is used by an armed force in furtherance of its mission," the military judge asked Appellant to explain why he was guilty of stealing military property. Appellant responded,

> When purchasing the items used in the GPC card, the money behind the card is the government's money, and the items when purchased legally belonged to the military. What I stole belonged

3

to the military. I had no authority or right to take these items for my own use or benefit, and I was not under the mistaken belief that I did not [sic] have the right or authority. None of the items were lost, mislaid, or abandoned. They were purchased using the government money but taken by me for my own use. The value of this military property was more than $500. The theft by obtaining this property was done with the intent to permanently deprive the government of the use and benefit of the items by keeping it for my own use or keeping it to sell for profit. At the time I obtained these items, I had the intent to keep them for my own use or my benefit and not to return them for the use by the government.

The military judge later went through the 198-page stipulation of fact outlining the scope of Appellant's guilt, which included a lengthy list of items Appellant admitted he had unlawfully used his GPC to purchase. The military judge specifically discussed the list of items contained in the stipulation and inquired how the items listed satisfied the definition of military property. For the items that could have been legitimately purchased for deployment, Appellant explained how the items could be used for a uniquely military purpose such as for unit morale. For items that served no military purpose, Appellant explained that the money behind the GPC purchases belonged to the military.

Appellant also pleaded guilty to violating Air Force Instruction (AFI) 64–117, *Air Force Government Purchase Card Program*, ¶ 2.3.5 (20 Sep. 2011),[3] which reads in relevant part,

> A cardholder who makes unauthorized purchases, allows others to use the card, or carelessly uses the GPC shall be liable to the Government for the total dollar amount of unauthorized purchases made in connection with the misuse or negligence. . . . The Government shall be liable for use of GPCs by authorized cardholders.

### 2. Law and Analysis

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). In discharging this duty, we review whether the record before us contains a substantial basis in law and fact to question the plea. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

---

[3] This version of the AFI was superseded by a subsequent version dated 22 June 2018. Paragraph 2.3.5 in the 2011 version is not included in the 2018 version, but a similar provision can be found in paragraph 13.6 of the 2018 version.

Relying heavily on *United States v. Cimball Sharpton*, 73 M.J. 299 (C.A.A.F. 2014), Appellant argues that there was no factual basis upon which to accept his plea because there is no evidence that "the Air Force paid the GPC-issuing financial institution the full amount owed for the alleged unauthorized purchases." We disagree.

To begin with, the facts of *Cimball Sharpton* are notably distinguishable from the facts of the case now before us. Though the appellant in *Cimball Sharpton* was also charged with misusing her GPC to purchase personal items, she pleaded not guilty, but stipulated to the fact that the Defense Finance and Accounting Service (DFAS) paid the financial institution that issued the GPC. On appeal, the United States Court of Appeals for the Armed Forces (CAAF) considered whether the Air Force was the appropriate victim in the case. Pointing to a 2002 amendment to the Manual for Courts-Martial, the CAAF noted that "[w]rongfully engaging in a credit, debit, or electronic transaction to obtain goods or money is an obtaining-type larceny by false pretense. Such use to obtain goods is *usually* a larceny of those goods from the merchant offering them." *Id.* at 301 (citing *Manual for Courts-Martial, United States* (2002 ed.), pt. IV, ¶ 46.c.(1)(h)(vi)). The CAAF held that based on the evidence that the Air Force agreed to pay for all GPC purchases, it was the Air Force rather than the issuing bank that suffered the financial loss resulting from the larceny.

Notably, the CAAF later clarified its ruling in *Cimball Sharpton*:

> Unfortunately, the language we used focused on the Air Force as 'the victim,' and the one who 'suffered the financial loss.' More accurately, it should have stated that the Air Force was an appropriate person to allege in the larceny specification because it was an entity from which the appellant wrongfully obtained goods or money. The appellant – the Air Force's agent – exceeded her authority and abused her role as an agent by either obtaining money from the Air Force by wrongfully inducing it to pay funds to U.S. Bank as if the charges were, in fact, authorized purchases, or by wrongfully obtaining goods from the Air Force by keeping goods that she purchased without authority but that, in fact, belonged to the Air Force.

*United States v. Williams*, 75 M.J. 129, 134 (C.A.A.F. 2016) (quoting *Cimball Sharpton*, 73 M.J. at 301–02).

The factors the CAAF points to in its clarification of *Cimball Sharpton* are also applicable to Appellant's case. Here, Appellant likewise exceeded his authority as an agent of the Air Force by wrongfully inducing it to pay funds for items that were not authorized or by keeping goods that in fact belonged to the Air Force. Appellant argues that, "[u]nlike [*Cimball*] *Sharpton*, there was no factual basis or evidence in the case at bar that DFAS or the Air Force paid the

GPC-issuing financial institution the full amount owed for the alleged unauthorized purchases." But Appellant's reliance on the absence of this particular fact ignores a critical difference between his case and *Cimball Sharpton*—Appellant pleaded guilty.

Because Appellant pleaded guilty, we apply a different standard of review than the one applied in *Cimball Sharpton*. In *Cimball Sharpton*, the CAAF considered "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 73 M.J. at 301 (citing *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011)). When reviewing a military judge's acceptance of a guilty plea, we do not "speculate post-trial as to the existence of facts which might invalidate an appellant's guilty pleas." *Faircloth*, 45 M.J. at 174 (quoting *United States v. Johnson*, 42 M.J. 443, 445 (C.A.A.F. 1995)). Rather, we determine "the factual circumstances admitted by the accused which objectively support his plea." *United States v. Shearer*, 44 M.J. 330, 334 (C.A.A.F. 1996) (internal citations omitted). Here, Appellant himself provided the factual basis upon which to accept his plea when he admitted that the items he stole belonged to the Air Force. Contrary to Appellant's assertion that he merely agreed with the military judge's conclusion that the Air Force was the victim of his crimes, Appellant provided several tailored responses to the military judge's inquiries as to why each item he stole satisfied the definition of military property due to either its uniquely military nature, its use in furtherance of the Air Force mission, or the Air Force's greater possessory interest in the item purchased.

Notwithstanding the fact that Appellant stole some items which served a legitimate military purpose and others which did not, there can be no argument that the Air Force had a greater possessory interest in all of the items Appellant stole. Indeed, Appellant pleaded guilty to violating the very provision of AFI 64–117 that clearly states, "[t]he Government shall be liable for use of GPCs by authorized cardholders." Appellant was such a cardholder. He did not steal the GPC; he was properly trained and authorized to use it. It is therefore of no consequence that there was no evidence of who paid the GPC bill. As the CAAF noted in *Williams*, "an Article 121, UCMJ, conviction does not turn on identifying the 'victims,' 'impact,' and 'loss' as those terms are commonly used and employed. Rather, it requires, inter alia, that an appellant steal something *from* a person who owns it or has a greater possessory interest in it than the appellant." *Williams*, 75 M.J. at 130 (citing *United States v. Lubasky*, 68 M.J. 260, 263 (C.A.A.F. 2010)). By Appellant's own admission, he stole *from* the Air Force. We find no substantial basis upon which to question his plea and therefore find it provident.

**B. Appellant's Pretrial Agreement to Assist the Government**

Prior to trial, Appellant entered into a pretrial agreement with the convening authority in which Appellant offered, *inter alia*, to plead guilty. In exchange for Appellant's offer, the convening authority agreed to not approve any sentence of confinement in excess of 20 months. The appendix to Appellant's offer of pretrial agreement also included the following provision:

> After sentence is adjudged, [the convening authority] will grant [Appellant] testimonial immunity, and [Appellant] agrees to provide the Government information regarding his knowledge of other individuals' participation in larceny, fraud, and Government Purchase Card abuse. [Appellant] will fully cooperate with any related investigations and will testify truthfully in any resulting courts-martial.

Appellant raises two issues with respect to his pretrial agreement to assist the Government: (1) that the Staff Judge Advocate (SJA) failed to properly advise the convening authority that Appellant was entitled to greater clemency rights due to his "substantial assistance;" and (2) that Appellant's guilty plea should be set aside because Appellant entered into his pretrial agreement with the understanding that the assistance he provided the Government might persuade the convening authority to grant clemency. We address each allegation in turn.

**1. Advice to the Convening Authority.**

*a. Additional Background*

Upon the completion of Appellant's court-martial, the SJA prepared a recommendation advising the convening authority on what action could be taken on Appellant's sentence. The SJA specifically advised the convening authority that, in accordance with the pretrial agreement, "confinement would be limited to 20 months." The SJA further advised the convening authority that he had "the authority to disapprove, commute, or suspend in whole or in part the reduction in grade, and the forfeitures." The SJA did not comment on whether the convening authority could take action to disapprove, commute, or suspend in whole or in part the adjudged dishonorable discharge.

Following receipt of the SJAR, Appellant's trial defense counsel submitted a request for clemency on his behalf. She asked the convening authority to reduce Appellant's dishonorable discharge to a bad-conduct discharge. She provided several reasons in support of her request and specifically informed the convening authority that "since [Appellant] has been of substantial assistance to the Government after his trial, you are able to take actions normally forbidden by Congress in accordance with Article 60(c)(4)(B)."

The SJA later prepared an addendum to the SJAR, but did not comment on trial defense counsel's statement of law. Instead he simply indicated that he reviewed the clemency submission and that his "earlier recommendation remained unchanged." After considering both the SJAR and Appellant's clemency submission, the convening authority took action in accordance with the SJA's recommendation—approving only 20 months of confinement, but otherwise approving the sentence as adjudged.

### b. Law and Analysis

"Proper completion of post-trial processing is a question of law, which this court reviews de novo." *United States v. LeBlanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (citing *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004)) (additional citations omitted). Failure to comment in a timely manner on matters in the SJAR or matters attached to the SJAR waives or forfeits any later claim of error unless there was plain error. Rule for Courts-Martial (R.C.M.) 1106(f)(6); *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000). In analyzing for plain error, we assess whether "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Kho*, 54 M.J. at 65 (citations omitted).

Article 60, UCMJ, governs the convening authority's ability to grant clemency. Article 60(c)(4)(B), the provision of the statute on which Appellant relies, states,

> Upon the recommendation of the trial counsel, in recognition of the substantial assistance by the accused in the investigation or prosecution of another person who has committed an offense, the convening authority . . . shall have the authority to disapprove, commute, or suspend the adjudged sentence in whole or in part
> . . . .

Article 60(c)(4)(B), UCMJ, 10 U.S.C. § 860(c)(4)(B).

Appellant asserts that the SJAR was erroneous in that it failed to apprise the convening authority of the Article 60(c)(4)(B) provision and "the 'substantial assistance' Appellant had provided to investigators." We disagree.

As applied to Appellant's case, Article 60, UCMJ, authorized only two forms of clemency: (1) the convening authority could approve, disapprove, commute, or suspend a sentence in whole or in part pursuant to the terms of the pretrial agreement in accordance with Article 60(c)(4)(C); and (2) the convening authority could disapprove, commute, or suspend in whole or in part the adjudged reduction in grade and the adjudged forfeitures in accordance with Article

60(c)(2)(B). Both during clemency[4] and on appeal, Appellant asserts that Article 60(c)(4)(B) authorized a third form of clemency: the convening authority could reduce Appellant's dishonorable discharge to a bad-conduct discharge based on Appellant's "substantial assistance" to the Government. But Appellant fails to satisfy the threshold requirement for Article 60(c)(4)(B) to apply—the recommendation of trial counsel.

Contrary to Appellant's assertions, Article 60(c)(4)(B) cannot be read to authorize greater clemency than its plain language provides. Appellant invites us to adopt a broader reading of the article because "[o]therwise, there would be no purpose for the substantial assistance provision in the UMCJ." We decline to do so.[5] Even if we found fault in the language of Article 60(c)(4)(B), we are not authorized to rewrite a statute because we "deem its effects susceptible of improvement." *Badaracco v. Commissioner*, 464 U.S. 386, 398 (1984) (citations omitted). Our assessment of the existence or quality of Appellant's assistance is irrelevant to our analysis where, as here, Congress created an unambiguous limitation on the convening authority's power to grant the requested clemency: that the power exists only "[u]pon the recommendation of the trial counsel." Article 60(c)(4)(B), 10 U.S.C. § 860(c)(4)(B). There being no such recommendation in Appellant's case, the SJA did not err in failing to apprise the convening authority of the provision.

---

[4] Trial defense counsel's statement to the convening authority that Article 60(c)(4)(B) authorized otherwise forbidden clemency was a misstatement of the law. As a general matter, "[w]here trial defense counsel misstates the law in a clemency submission to the convening authority, the staff judge advocate is duty-bound to correct it in the [a]ddendum to ensure that the convening authority exercises that authority in conformity with the law." *United States v. Troester*, No. ACM S32385, 2017 CCA LEXIS 332, at *6 (A.F. Ct. Crim. App. 12 May 2017) (unpub. op.), *rev. denied,* 76 M.J. 429 (C.A.A.F. 2017). Though not raised by Appellant, we considered whether this error required new post-trial processing. Because trial defense counsel's misstatement of the law incorrectly informed the convening authority he had more, rather than less, discretion than he actually had, we find no colorable showing of possible prejudice. *United States v. Johnson*, 26 M.J. 686, 689 (A.C.M.R. 1988), *aff'd*, 28 M.J. 452 (C.M.A. 1989); *cf. United States v. Zegarrundo*, 77 M.J. 612 (A.F. Ct. Crim. App. 2018).

[5] We note that the United States Supreme Court rejected a similar argument in *Melendez v. United States*, 518 U.S. 120 (1996). In *Melendez*, the Court interpreted a federal statute, 18 U.S.C. § 3353(e), which authorizes a judge to depart from a *statutory minimum* "[u]pon motion of the government . . . so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." *Melendez*, 518 U.S. at 124 (quoting 18 U.S.C. § 3353(e)). Although the prosecutor moved the district court to depart from the sentencing guidelines, the Court found that, because the prosecutor failed to move specifically for the district court to depart below the statutory minimum, the judge had no authority to do so. *Id*. at 125–26, 131.

**2. Misunderstanding of the Pretrial Agreement**

In a related claim, Appellant asserts that because he erroneously believed his assistance to the Government could have led to greater clemency relief, he did not freely and voluntarily enter into his plea agreement. Relying on this court's holding in *Robinson*, Appellant asks us to set aside the findings and sentence in his case. We decline to do so.

### a. Additional Background

After announcing Appellant's sentence, the military judge reviewed the appendix to Appellant's offer for pretrial agreement and discovered the aforementioned provision requiring Appellant to provide information to the Government. The military judge then explained to Appellant that the provision "requires you to, once you are provided testimonial immunity, agree to provide the government information that is listed there." The military judge then had a lengthy exchange with trial counsel confirming that Appellant had not yet been granted immunity and that there was no end date to Appellant's required participation. Both Appellant and his trial defense counsel agreed with the military judge's interpretation of the term requiring Appellant to provide information to the Government.

### b. Law and Analysis

The interpretation of a PTA is a question of law, which we review de novo. *United States v. Smead*, 68 M.J. 44, 59 (C.A.A.F. 2009); *United States v. Acevedo*, 50 M.J. 169, 172 (C.A.A.F. 1999). "To ensure that the record reflects the accused understands the pretrial agreement and that both the Government and the accused agree to its terms, the military judge must ascertain the understanding of each party during the inquiry into the providence of the plea." *United States v. Smith*, 56 M.J. 271, 272–73 (C.A.A.F. 2002). R.C.M. 910(h)(3) permits the military judge to take corrective actions "[i]f the military judge determines that the accused does not understand the material terms of the agreement." Whether a term is material to the agreement "depends upon the circumstances of the case." *Smith*, 56 M.J. at 273.

We begin our analysis by noting that Appellant's reliance on *Robinson* is misplaced. In *Robinson*, this court found that a provision requiring the convening authority to "consider disapproving, commuting, mitigating or suspending the entire sentence or any portion thereof as a matter of clemency when taking action" was an impermissible term because it was inconsistent with the plain language of Article 60(c)(4)(C). *Robinson,* 78 M.J. at 583. Because the appellant relied on the provision when he agreed to plead guilty, his guilty plea was found improvident and the findings and sentence were set aside. *Id.* at 583–84.

Turning now to Appellant's case, we look "first to the language of the agreement itself." *Acevedo*, 50 M.J. at 172. We find that, unlike *Robinson*, the provision at issue in Appellant's pretrial agreement did not purport to impermissibly expand the convening authority's power to grant clemency pursuant to Article 60. By its plain language, the provision required the convening authority to grant Appellant testimonial immunity and, in turn, required Appellant to provide information to the Government. Here, the military judge adequately explained the provision to Appellant and ensured both parties shared his interpretation of the provision at issue. *Smith*, 56 M.J. at 272–73.

Though Appellant acknowledges "there was no *per se* promise here," he claims that his "understanding of what the convening authority could have done influenced his decision to enter into the [pretrial agreement]." We are not persuaded. "Rejection of a guilty plea on appellate review requires that the record of trial show a substantial basis in law and fact for questioning the guilty plea." *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002) (citing *United States v. Prater*, 32 M.J. 433, 436 (U.S.C.M.A. 1991)); Article 45(a), UCMJ, 10 U.S.C. § 845(a). Even assuming *arguendo* that Appellant misunderstood the provision at issue, we find nothing in the record that supports his misunderstanding. We find particularly significant the fact that Appellant had not provided any assistance, much less "substantial assistance," at the time he entered into the pretrial agreement. He merely agreed that he would do so once the convening authority had granted him testimonial immunity. As the military judge made clear, this prerequisite could happen at some indefinite point in the future, *i.e.*, after the post-trial processing of Appellant's case. The fact that the terms of the provision were fulfilled prior to Appellant's opportunity to submit clemency appears to be the result of fortuitous timing rather than evidence of Appellant's intent in offering to plead guilty.

Unlike the appellant in *Robinson*, Appellant did not enter into the pretrial agreement because he believed the convening authority could reduce his dishonorable discharge to a bad-conduct discharge. In a declaration to this court, Appellant asserts that he believed "the convening authority might have some mercy on [him] for admitting [his] guilt and providing information in order to prosecute other perpetrators and recover missing government property." Thus, Appellant's plea did not "[rest] in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration." *Santobello v. New York*, 404 U.S. 257, 262 (1971).

We, like the military judge, find that Appellant entered his guilty plea voluntarily and with full knowledge of its meaning and effect. We therefore find Appellant's plea provident and decline to grant the requested relief.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c) (2016). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

JULIE L. ADAMS
Deputy Clerk of the Court