CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
PENLAND, MORRIS and ARGUELLES[1]
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Warrant Officer One JOSEPH S. BURCH**
**United States Army, Appellant**

ARMY 20230576

Headquarters, U.S. Army Aviation Center of Excellence (trial)
Headquarters, Combined Arms Center and Fort Leavenworth (Article 66(f) Hearing)
Trevor I. Barna, Military Judge (arraignment)
Pamela L. Jones, Military Judge (motion hearing and trial)
Tyesha L. Smith, Military Judge (Article 66(f) Hearing)
Lieutenant Colonel Virginia H. Tinsley, Staff Judge Advocate (trial)
Colonel Robert L. Manley, Staff Judge Advocate (Article 66(f) Hearing)

For Appellant: Colonel Phillip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert D. Luyties, JA (on brief).

For Appellee: Colonel Christopher B. Burgess, JA; Colonel Jacqueline J. DeGaine, JA; Major Chase C. Cleveland, JA (on brief).

21 October 2024

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

ARGUELLES, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his plea, of assault consummated by battery in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 [UCMJ]. The military judge did not impose any punishment, and the convening authority took no action.

---

[1] Judge ARGUELLES decided this case while on active duty.

This case is now before us for review under Article 66, UCMJ.[2] Appellant raises four assignments of error, two of which merit discussion, and one of which merits relief in the form of setting aside his guilty plea, nullifying the original plea agreement, and returning the parties to the status quo ante. In light of the relief ordered, we need not address appellant's remaining assignments of error or the claims he personally raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

## BACKGROUND

After considering the initial briefings filed by the parties, this court remanded the matter for additional factfinding to address a substantial issue on appeal pursuant to Rule for Courts-Martial [R.C.M.] 810(f)(1). The military judge who conducted the hearing provided detailed and thorough findings of fact, the majority of which we adopt as summarized below.

On 23 August 2022, Appellant was charged with violating four specifications of Article 120, one specification of Article 128b, and one specification of Article 90. The government subsequently dismissed the Article 128b and Article 90 specifications. Following an Article 39(a) motions hearing in July of 2023, the Special Victim Prosecutor (SVP) and the lead defense counsel (defense counsel) began plea negotiations. The government's original offer was to dismiss the four Article 120 specifications in exchange for appellant's guilty plea to an Article 128b "domestic violence" specification. In discussing the offer with appellant, defense counsel explained the ramifications of such a conviction under the Lautenberg Amendment to the Gun Control Act of 1968 (Lautenberg Amendment), which criminalizes possession of firearms by those previously convicted of a misdemeanor crime of domestic violence. 18 U.S.C. § 922(g)(9). During their conversation, appellant reiterated to defense counsel that he did not want to plead guilty to any crime which affected his ability to own and use firearms. Defense counsel testified at the R.C.M. 810(f) hearing that he reported back to the SVP:

> Sir, this is -- this deal won't work. Here, Lautenberg cannot apply. If Lautenberg applies, a deal will not go through. My client is an avid hunter. He does it for recreational purposes. He wants to eventually do it with his son. So that deal won't work.

As a counteroffer, defense counsel proposed a Resignation for the Good of the Service (RFGOS). After discussing the matter with the alleged victim, the SVP told defense counsel that the victim and the government would support a RFGOS. Although he initially approved the RFGOS counteroffer, appellant changed his mind

---

[2] For purposes of clarity and efficiency, subsequent reference to the UCMJ will exclude citation to that work.

because he was also attempting to obtain a medical separation for injuries suffered in a recent motorcycle accident. Appellant asked his counsel if there was a way to continue with the medical separation process by pleading guilty to a non-domestic violence/non-Lautenberg qualifying offense.

Defense counsel explained at the R.C.M. 810(f) hearing how he then went back to the SVP and proposed that appellant plead guilty to assault consummated by battery in violation of Article 128, as he believed that would avoid the consequences of the Lautenberg Amendment:

> Look, sir, I spoke with my client. How would the government feel towards pleading guilty to a 128? And I explicitly said again, I was like, Sir, I was like, plead guilty to a 128, Lautenberg here cannot apply. Again, if Lautenberg applies, the deal won't go through. It won't work because he – my client – sorry – my client made it explicitly clear that he wants to return to hunting at some point in the future when he recovers.

Based on this conversation, defense counsel believed that the SVP understood that the reason behind the offer to plead guilty to Article 128, instead of an Article 128b offense, was to avoid appellant being subject to the Lautenberg Amendment's collateral firearm restrictions.

During the R.C.M. 810(f) hearing, the SVP asserted that "knowing that [appellant] had pled guilty to assault consummated by a battery on his spouse – [] – I thought that he absolutely would be subject to Lautenberg, in light of the offense to which he was pleading guilty." The SVP also testified, however, that he did not share with defense counsel his belief that Lautenberg would "absolutely" apply.

Appellant accepted this offer based on his counsel's advice that the Article 128 offense was a non-qualifying offense under the Lautenberg Amendment. Defense counsel did admit at the R.C.M. 810(f) hearing that he had "reservations" about the applicability of the Lautenberg Amendment and knew it would depend on the providence inquiry and language in the written stipulation of fact. As there was no reference to "spouse" or "intimate partner" in the newly created Article 128 charge, and the stipulation of fact had only one sentence indicting appellant and the alleged victim were married at the time, defense counsel believed the nature of the offense itself made it non-qualifying when combined with the anticipated providence inquiry.

On 6 November 2023, the day of trial, the military judge held an off-the-record R.C.M. 802 session with counsel (but not appellant) in chambers. In that session, the military judge inquired into which offense appellant was pleading guilty to: "Article 128 - assault consummated by a battery; Article 128 - Battery upon a

spouse, intimate partner or immediate family member for offenses occurring on or after 1 January 2019 and before 26 January 2022; or Article 128b – 'Domestic Violence'." The government confirmed, and the defense concurred, that it was not a "domestic violence" charge, but only an assault consummated by a battery.

Although there was no explicit mention of the word "Lautenberg" in the R.C.M. 802 session, defense counsel mistakenly believed that since all counsel and the military judge agreed appellant was not pleading guilty to a "domestic violence" offense, all parties were also in agreement that the Lautenberg Amendment would not apply. Specifically, defense counsel testified at the R.C.M. 810(f) hearing:

> [G]iven plea negotiations, and given the conversations I had with [SVP] and what the judge was asking, it was my understanding that that -- what she was referring to was Lautenberg -- like, this isn't an offense that's going to trigger Lautenberg in this case.

Summarizing the R.C.M. 802 session in front of appellant on the record, the military judge described "a meeting of the minds amongst the parties as it pertains to the Article 128 offense." After the R.C.M. 802 session, defense counsel told appellant, "this is going to proceed normally," and that based on the judge's comments "we're, so far, like where – where we need to be."

Defense counsel also testified that in a prior case before the same military judge where the Lautenberg Amendment applied, the judge discussed those collateral consequences as part of her colloquy with the accused. Defense counsel also explained to appellant that if the judge asked him any questions about the Lautenberg Amendment in this case, "I'll basically let the judge know that Lautenberg here, based on the agreement, based on the negotiations and the common understanding of the parties, was not to be triggered." The fact that the military judge did not mention the Lautenberg Amendment during the plea colloquy further confirmed the belief of defense counsel and appellant that all parties agreed that the Lautenberg Amendment was not applicable in this case.

In his closing argument at the R.C.M. 810(f) hearing, government counsel conceded:

> There was a material misunderstanding between the parties. I mean, by definition, that's not an agreement. There was a misunderstanding as to what the applicability of Lautenberg – on behalf of the defense as to whether Lautenberg did, in fact, apply.

After trial was complete, the government prepared the Statement of Trial Results (STR) in which Box 32 ("Has the accused been convicted of a misdemeanor crime of domestic violence (18 U.S.C. § 922(g)(9)") was checked "yes." Although

the military judge signed the STR on 6 November 2023, neither the military judge nor government counsel forwarded a copy of the STR to the defense. On 7 December 2023, defense counsel emailed the court reporter to request a copy of the STR. Immediately upon receipt of the STR, defense counsel alerted government counsel and the military judge that because the Lautenberg Amendment did not apply, the proper check for Box 32 was "no." The military judge responded "I apologize that I did not catch that error. Any corrections to the STR should be made in the EOJ [Entry of Judgment] before the EOJ is sent to me for signature." The government, however, responded "[t]he government's position is that the STR was initially correct when signed." In further reply, defense counsel sent an email to the court and counsel stating in pertinent part:

> [A] material term of the agreement was to plead to simple assault and not a domestic offense against a spouse or Article 128b. Here, my client did not plead guilty to a domestic violence offense against his spouse. Defense specifically discussed pleading guilty to a simple battery, none [sic] domestic violence offense, with Government counsel because Lautenberg was not to be applied to this case. Government counsel now inappropriately seeks to circumvent a material term of the agreement and apply Lautenberg by selecting yes on box 32 of the STR in violation of defense plea.

The next day, 8 December 2023, the military judge responded that she would not rule based on emails and that if either party was requesting relief, they should do so by filing a written motion.

On 14 December 2023, the government informed the military judge by email that the convening authority took no action on the case. The government did not copy defense counsel on that email, nor did they otherwise provide counsel with the convening authority action. On 15 December 2023, the military judge signed the EOJ, and on the same day, the defense submitted its post-trial motion to amend the STR as requested by the military judge. On 19 December 2023, the military judge sent an email to counsel stating in pertinent part:

> The Convening Authority took action in this case on 14 DEC 23 and the court completed the EOJ on the morning of 15 DEC. Because the EOJ was completed before the court received the defense motion for appropriate relief, it is the court's position that I do not have any authority to conduct a post-trial Article 39(a) session in this case.
>
> It is also the court's position that the STR is correct as written and block 32 should be checked.

> . . .

If there was a sub rosa agreement between the Government and the Defense that pertains to a collateral consequence of the conviction that was not included in the written plea agreement, those issues will have to be addressed at the CCA.

On 8 January 2024, the defense sent an email to the military judge and government counsel objecting to the military judge's finding that she lacked jurisdiction to consider the defense motion. On 9 January 2024 the military judge authenticated the record of trial.

## LAW AND DISCUSSION

### A. Applicability of the Lautenberg Amendment

We start our analysis by confirming that the specification to which appellant pled guilty is a qualifying conviction under the Lautenberg Amendment. As noted above, 18 U.S.C. § 922(g)(9) criminalizes the possession of firearms by those previously convicted of a misdemeanor crime of domestic violence, which is in turn defined as an offense that: (1) is a misdemeanor under federal, State, Tribal or local law; (2) has an element, the use or attempted use of force; (3) is committed by a spouse or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, or by a person who has a current or recent former dating relationship with the victim. 18 U.S.C. § 821(a)(33)(A).

As applied here, all three of the Lautenberg Amendment qualifying requirements are present: (1) Article 128, which has a maximum punishment of six months, qualifies as a misdemeanor offense under federal law; (2) Article 128 requires the use of force, and appellant admitted that he used unlawful force when he grabbed the victim's wrist; and (3) appellant admitted both in the stipulation of fact and plea colloquy that the victim was his spouse. Finally, the fact that the wording of the specification did not specifically allege that the victim was appellant's spouse does not change the analysis. *See United States v. Hayes*, 555 U.S. 415, 426 (2009) (holding that although the government must prove the existence of the qualifying relationship under section 922(g)(9), such a relationship is not a required statutory element).[3]

---

[3] We reject any mootness arguments based on the claim that since the military considers a general court-martial (GCM) to be the equivalent of a federal civilian felony, appellant's GCM conviction in this case would preclude him from possessing firearms irrespective of the Lautenberg Amendment. The general "felon-in-possession" restrictions of 18 U.S.C. 922(g)(1) are applicable to persons convicted of "a crime punishable by imprisonment for a term *exceeding one year*." Although potentially subject to different jurisdictional interpretations, it appears appellant's

(continued . . .)

## B. Appellant's Material Misunderstanding of the Plea Agreement

### 1. Law

We recognize at the outset that the Court of Appeals for the Armed Forces (C.A.A.F.) has very recently held that this court does not have the authority or jurisdiction to correct or make changes to Block 32 of the STR. *United States v. Williams*, __ M.J. __, 2024 CAAF LEXIS 501, at *3 (C.A.A.F. 5 Sep. 2024). In this case, however, appellant is not asking us to change Block 32, but is rather challenging the providence of his plea agreement due to his misunderstanding of the firearm restriction collateral consequences imposed by the Lautenberg Amendment. As such, *Williams* is distinguishable. *Id.*, at *9-10. ("And although the military judge advised Appellant during the providence inquiry that his guilty plea would not trigger the Lautenberg Amendment, Appellant has not challenged the providence of his guilty plea or raised any similar objection.").[4]

In *United States v. Smith*, the C.A.A.F. held that in an appeal involving a misunderstanding of a collateral consequence, a guilty plea may be withdrawn only when that consequence is both "major" and such misunderstanding: "(a) results foreseeably and almost inexorably from the language of the pretrial agreement; (b) is induced by the trial judge's comments during the providence inquiry; or (c) is made readily apparent to the judge, who nonetheless fails to correct that misunderstanding." 56 M.J. 271, 273 (C.A.A.F. 2002) (*citing United States v. Bedania,* 12 M.J. 373, 376 (C.M.A. 1982)); *see also United States v. Albert*, 30 M.J. 331, 332 (C.M.A. 1990) (holding that where collateral consequence is *not* the result of a representation made by the convening authority or trial counsel, appellant is not entitled to relief). Whether a collateral consequence is major or material depends upon the circumstances of the case. *Smith*, 56 M.J. at 273.

---

( . . . continued)
conviction of a six-month maximum Article 128 offense, even though sustained in a GCM, is not likely to trigger the federal firearm restrictions of Section 922(g)(1). Along the same lines, while paragraph 1.2(c)(2) of Department of Defense Instruction 5504.14 requires the collection and submission of DNA samples from all "[s]ervice members against whom court-martial charges are preferred," such a requirement does not appear to have any impact on the right to possess firearms in the future.

[4] Although not directly relevant to our holding, we also note that in *Williams* the C.A.A.F. did not address R.C.M. 1101(e)(2), which provides that "[t]he Court of Criminal Appeals, the Court of Appeals for the Armed Forces, and the Judge Advocate General or the Judge Advocate General's designee may modify the Statement of Trial Results in the performance of their duties and responsibilities."

If we find appellant entered into his plea with a misunderstanding of a major collateral consequence, resulting from either the written pretrial agreement or representations made to him by the government, the remedy is either specific performance or, if specific performance is not available, "nullify[ing] the original pretrial agreement, [and] returning the parties to status quo ante." *United States v. Perron*, 58 M.J. 78, 86 (C.A.A.F. 2003); *see also Smith*, 56 M.J. at 273 ("[T]he remedy is either specific performance of the agreement or an opportunity for the accused to withdraw from the plea." (citing *Santobello v. New York*, 404 U.S. 257, 263 (1971))); *United States v. Mitchell*, 50 M.J. 79, 82-83 (C.A.A.F. 1999) (holding that where appellant has a substantial misunderstanding of pretrial agreement, "the pleas would be treated as improvident, the findings would be set aside, and he would be subject to retrial").

*2. Analysis*

First, we note that in this record, there is no dispute that the applicability/non-applicability of Lautenberg Amendment was a "material" collateral consequence to appellant and the defense team. Appellant made clear to his counsel he would not enter into any plea agreement that resulted in him losing his right to possess firearms, and defense counsel likewise relayed that sentiment to the SVP on multiple occasions. As such, because the SVP was aware that avoiding the applicability of the Lautenberg Amendment was the key consideration of appellant and the defense team in their plea negotiations and decision to plead guilty, on these facts the applicability of the Lautenberg Amendment is a "major" consequence.

In a footnote to her findings of fact, the R.C.M. 810(f) judge noted "[t]he court makes no finding whether the government knew that [defense counsel] misunderstood the applicability of Lautenberg to appellant's offense during plea agreement negotiations." We do not fault the military judge for not reaching findings outside the scope of our remand order, but rather commend her for realizing the significance of this issue and raising it for our attention.

Having considered the entire record, to include the R.C.M. 810(f) findings of fact, we answer the question posed by the R.C.M. 810(f) judge in the affirmative. In short, the SVP was not only aware of defense counsel's misunderstanding of the Lautenberg Amendment, but unfairly took advantage of that misunderstanding to secure a guilty plea. We can fathom no reason why, after defense counsel repeatedly told the government that the whole point of the negotiations was to avoid such a consequence, a prosecutor negotiating in good faith would fail to disclose that he "absolutely" knew the Lautenberg Amendment applied. As such, appellant's misunderstanding of the applicability of the Lautenberg Amendment was: (1) in large measure induced by the conduct of the SVP; and (2) made clear to the SVP, who nonetheless failed to correct that misunderstanding. Although the C.A.A.F. in *Smith* referred to the *trial judge's* comments or failure to correct an appellant's

misunderstanding, we find the same logic and rationale must apply equally to government counsel. *See Albert*, 30 M.J. at 332 (holding appellant not entitled to relief where no misrepresentation "made by the convening authority or *trial counsel*" (emphasis added)).

In addition to the SVP's actions, the trial judge's comments at trial *inadvertently* contributed to the misunderstanding of appellant and the defense team. Although the trial judge was not aware of the prior negotiations and/or significance of the Lautenberg Amendment to the defense, her comments at trial helped solidify the misunderstanding that the SVP fostered and failed to correct. For example, when viewed through the lens of defense counsel and appellant entering into the plea agreement, it is easy to see how the military judge's comments about appellant not pleading to a "domestic violence" offense, and the parties reaching a "meeting of the minds," could reinforce their incorrect belief that the Lautenberg Amendment did not apply. Likewise, although under no obligation to do so either way, the fact that in prior cases the military judge advised the accused of Lautenberg consequences when applicable, but did not do so in the case, once again gave the impression to appellant and his counsel that the Lautenberg Amendment did not apply. To reiterate, we are not finding that the military judge was aware of and failed to correct appellant's misunderstanding of a material collateral consequence during the trial, but rather only that her comments inadvertently served to reinforce appellant's mistaken belief that his guilty plea would not impact his ability to possess firearms.[5]

In sum, given the materiality of the Lautenberg Amendment collateral consequence, combined with the fact that appellant's misunderstanding of that consequence resulted from the SVP's deliberate actions and the trial judge's inadvertent comments, appellant is entitled to withdraw his plea. Since specific performance is not an available remedy, we will nullify the original plea agreement and return the parties to the status quo ante.

### C. The Trial Judge's Failure to Hold a Post-Trial Hearing

#### 1. Law

The standard of review for determining whether post-trial processing was properly completed is *de novo. United States v. Miller*, 82 M.J. 204, 207 (C.A.A.F. 2022) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

---

[5] Because the military judge was not aware of the potential disagreement as to a material term until *after* the trial, the third *Smith* factor (error made readily apparent to the judge who nevertheless fails to correct the misunderstanding) is not at issue in this case. Nevertheless, separate and distinct from the *Smith* analysis, as explained below, the military judge did err when she failed to address the issue when defense counsel subsequently put her on notice of the issue that is the subject of this appeal.

Rule for Courts-Martial 1101(d) mandates that trial counsel provide a copy of the STR to defense counsel, and Army Regulation (AR) 27-10, paragraph 5-42(a) (20 Nov. 2020) states, "[b]efore signing the STR, the military judge will review the STR for accuracy with trial counsel and counsel for the accused."

Army Regulation 27-10 paragraph 5-50(b) provides that the military judge must hold a post-trial Article 39(a) session to resolve "any matter that substantially affects the legal sufficiency of any finding or the sentence that is capable of being resolved at the trial level," to include "[a] material error in the STR" or "[a]ny error in the post-trial processing of the court-martial."

Rule for Courts-Martial 1104(b)(1)(C)/(E) and 1104(b)(2) provide that a party may file a post-trial motion alleging an error in the STR or post-trial processing within fourteen days after receipt of the STR. Rule for Courts-Martial 910(f)(4)(B) states that if the military judge learns of a disagreement of the parties as to a material term of the plea agreement, she shall either "conform, with the consent of the Government, the agreement to the accused's understanding; or permit the accused to withdraw the plea." The Discussion following this rule further clarifies that "[i]f the accused *after* entering a plea of guilty sets up a matter inconsistent with the plea, the military judge *shall* resolve the inconsistency or reject the plea" (emphasis added).

In addition, there is a long line of precedent dictating that the military judge has the authority under Article 39(a), UCMJ, to take whatever post-trial action is necessary to remedy a potential error brought to her attention prior to authentication of the record. *See, e.g., United States v. Webb,* 66 M.J. 89, 92 (C.A.A.F. 2008) ("Prior to authentication, a military judge has authority under Article 39(a), UCMJ, 'to convene a post-trial session to consider newly discovered evidence and to take whatever remedial action is appropriate.'" (citing *United States v. Scaff,* 29 M.J. 60, 66 (1989))); *United States v. Griffith,* 27 M.J. 42, 47 (C.M.A. 1988) (holding that if the military judge becomes aware of "an error which has prejudiced the rights of the accused . . . he may take remedial action without awaiting an order therefor by an appellate court.").

### 2. Analysis

We appreciate, and whole-heartedly agree with, the government's concession that the military judge erred when she did not act on appellant's post-trial motion to address the misunderstanding about the applicability of the Lautenberg Amendment.

It is worth noting at the outset that trial counsel failed to comply with their obligations to forward a copy of the STR to defense as required by R.C.M. 1101(d), and the military judge failed to comply with her obligation to review the STR with both counsel for accuracy before signing it as required by AR 27-10, paragraph 5-42(a). Simply put, had either of these actions occurred in early November when she

signed the STR, there would have been more than enough time for the military judge to resolve the disputed issue before she signed the EOJ.

Moreover, once defense counsel put the military judge on notice in early December that there was a dispute over a "material term of the agreement," the military judge erred by not discharging her obligation under the applicable rules and regulations to resolve that issue before she signed the EOJ on 14 December 2023. Although the military judge summarily informed the parties in an email dated 19 December 2023 that the Lautenberg Amendment applied in this case, she did *not* resolve the dispute over whether appellant entered into the plea agreement with a material misunderstanding of its collateral consequences.

To the contrary, the military judge sidestepped the issue altogether by incorrectly noting "[i]f there was a sub rosa agreement between the Government and the Defense that pertains to a collateral consequence of the conviction that was not included in the written plea agreement, those issues will have to be addressed at the CCA." But, pursuant to *Webb, Scaff, et. al.*, the fact that the military judge signed the EOJ on 14 December did *not* preclude her from taking further corrective action before she authenticated the record in January of 2024. Moreover, and as was the case with the EOJ, there was also nothing that prevented the military judge from delaying her authentication of the record until after she resolved the disputed issue.

In sum, we agree with appellant that "[i]nstead of saving months of time for something that could have been resolved" with a post-trial hearing, the military judge abused her discretion in signing both the EOJ and authenticating the record knowing there were potentially multiple disagreements and with knowledge of defense counsel's post-trial objection. Directly on point is the concurring opinion in *Griffith:*

> But, if a military judge realizes that he has erred in his ruling or if some other reason moves him to reconsider his decision, then justice would be thwarted if a strict interpretation precludes him from correcting his own error. I believe such construction of the military judge's power will, in the long run, inure to the Government's benefit, for it provides an opportunity to clear up matters before the appellate processes take over.

27 M.J. at 49 (Cox, J., concurring).

Given that we are nullifying the original plea agreement and returning the parties to the status quo ante, however, we need not further address the appropriate remedy for the military judge's error in failing to hold a post-trial hearing.

## CONCLUSION

The findings of guilty and sentence are SET ASIDE. A rehearing may be ordered by the same or a different convening authority.

Judge PENLAND and Judge MORRIS* concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

---

*Corrected