*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
DALY, GROSS, and de GROOT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Joseph E. AVILA**
Gunnery Sergeant (E-7), U.S. Marine Corps
*Appellant*

**No. 202300249**

_____

Decided: 20 February 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Yong J. Lee (arraignment)
Andrea C. Goode (trial)
Matthew M. Harris (post-trial)

Sentence adjudged 21 June 2023 by a general court-martial tried at Marine Corps Base Camp Pendleton, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: confinement for six months, reduction to E-1, and a bad-conduct discharge.

For Appellant:
*Commander Kyle C. Kneese, JAGC, USN*

For Appellee:
*Lieutenant Colonel James A. Burkart, USMC*

Judge GROSS delivered the opinion of the Court, in which Senior Judge DALY and Judge de GROOT joined.

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under under NMCCA Rule of Appellate Procedure 30.2.**

———————————

GROSS, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas, of two specifications of violating a lawful general order or regulation, one specification of wrongfully carrying a concealed weapon, one specification of aggravated assault by strangulation, one specification of assault consummated by battery, and one specification of drunk and disorderly conduct in violation of Articles 92, 114, 128, and 134 of the Uniform Code of Military Justice [UCMJ].[1] In accordance with Appellant's plea agreement, the military judge sentenced Appellant to six months confinement, reduction to paygrade E-1, and a bad-conduct discharge.[2]

Appellant raises two assignments of error which we restate as follows: (1) did the Government fail to perform its obligation to waive forfeitures for six months as required by the plea agreement, thus making Appellant's pleas improvident; and (2) whether the bad-conduct discharge portion of the sentence is inappropriately severe for a Marine with nineteen-plus-years of service. We find no prejudicial error and affirm the findings and the sentence as adjudged.[3]

## I. BACKGROUND

Appellant had served in the Marine Corps for nearly nineteen years when he attended a going away function for one of his junior Marines at a local restaurant. What should have been an otherwise unremarkable evening recognizing the service of a fellow Marine, unfortunately unraveled quickly resulting

---

[1] 10 U.S.C. §§ 892, 914, 928, 934.

[2] Appellant was credited with 155 days of pretrial confinement.

[3] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

in Appellant committing a series of criminal acts in the presence of and toward the junior Marines in his charge.

When Appellant walked into the restaurant, he carried a concealed revolver. While Appellant was otherwise legally allowed to carry a concealed personal firearm off base, he knew he was not permitted to carry the weapon in public if he was consuming alcohol. In spite of this knowledge, Appellant had two beers and a shot of liquor. He then drew the handgun from its holster, removed a round from the cylinder, and displayed the round to his Marines before returning the cartridge to the cylinder and re-holstering the weapon.

After leaving the restaurant, Appellant joined several junior Marines at other bars to continue drinking. During the evening, he became overly intoxicated and engaged the Marines in profanity-laden conversations. He then joined the Marines at the home of Corporal (E-4) [Cpl] Williams where they played card games, sang karaoke, and watched a movie. During this time, Appellant slapped Lance Corporal (E-3) [LCpl] Pace on the buttocks and made unwanted physical advances toward Cpl Williams.[4]

Lance Corporal Pace, recognizing Appellant's improper behavior, attempted to intercede and separate Appellant from Cpl Williams, invited Appellant to go to get some fast food. Appellant accepted and during the car ride LCpl Pace told Appellant he had acted inappropriately with Cpl Williams. LCpl Pace then drove Appellant home to his on-base house. Appellant reacted to LCpl Pace's intervention by screaming at him, grabbing him by the throat, and impeding his airway while they were still in the car. After LCpl Pace escaped Appellant and fled the vehicle, Appellant chased him and struck him twice with a closed fist. As he was walking to his driveway Appellant was confronted by his neighbor, a master sergeant (E-8), who had seen the aftermath of the altercation with LCpl Pace. Appellant then retrieved a second pistol from one of his vehicles, pointed it at his own head, and threatened to kill himself before finally surrendering to authorities.

Appellant's command placed him in pretrial confinement. On 11 May 2023, Appellant submitted a plea agreement to the convening authority [CA]. The

---

[4] All names other than those of Appellant, judges, and counsel, are pseudonyms.

CA signed the agreement on 22 May 2023.[5] Appellant's End of Active Obligated Service [EAOS] was on 25 May 2023.[6]

The plea agreement included several provisions relevant to this appeal. The agreement provided, first, that adjudged forfeitures were not authorized. Second, the CA agreed to defer automatic forfeitures until entry of judgment and then waive automatic forfeitures for a period of six months, so long as Appellant maintained an allotment for the benefit of his dependents.[7] Third, the military judge was required to adjudge a bad-conduct discharge, reduction to paygrade E-1, and confinement for a minimum of 6 months and a maximum of 18 months.[8] Fourth, the CA agreed to withdraw and dismiss several specifications of abusive sexual contact and one specification of violation of a lawful general order in exchange for Appellant's guilty pleas.[9] Fifth, Appellant acknowledged he would be subject to automatic forfeitures unless the CA took action, but that, regardless, if he was held in confinement past his EAOS, he would not receive any pay or allowances by operation of law.[10] Finally, Appellant agreed to "waive all motions except those that are non-waivable pursuant to R.C.M. 705."[11]

At trial, the military judge discussed Appellant's plea agreement with him. During that discussion, Appellant confirmed that he understood that he was past his EAOS. His defense counsel also alerted the judge that Appellant had not been paid while in pretrial confinement prior to the plea. The military judge explained that she did not believe that was correct, and that because Appellant was in pretrial confinement "it should not affect his pay and allowances."[12] She continued, "[n]ow, the Court doesn't have authority to affect that

---

[5] App. Ex. II.

[6] Def. Ex. F at 1.

[7] App. Ex. II, para. 9.b.

[8] App. Ex. II, para. 10.

[9] App. Ex. II, para, 8.

[10] App. Ex. II, para. 11.d.

[11] App. Ex. II para. 8.h.

[12] R. at 99.

now, but the Court did let [defense counsel] know that if he needed assistance with that, he could talk to me after we get off the record."[13]

The military judge also asked trial defense counsel whether there were any motions that were waived pursuant to the plea agreement, and defense counsel stated that they would have raised a motion under Article 13, UCMJ, "on the pay issue."[14] The military judge confirmed with Appellant that he understood that he was waiving such a motion. When the military judge asked Appellant if he had set up an allotment to effectuate the deferral and waiver of automatic forfeitures, trial defense counsel explained that Appellant had been unable to set up an allotment because he was not being paid, but that "when *and if* pay restarts" Appellant would set up such an allotment.[15]

Appellant was provided and executed an appellate rights statement that again informed him that if he was held in confinement past his EAOS, neither he nor his dependents would receive any pay or allowances by operation of law.[16] Two days after announcement of sentence, and while Appellant remained in confinement, he requested the CA commute his sentence to confinement to time served and to suspend his reduction to E-1 as matters in clemency.[17] Appellant made no mention of his pay and allowances in his clemency submission.

## II. DISCUSSION

### A. Appellant was not denied the benefit of his bargain.

*1. Law*

Interpretation of a plea agreement is a question of law that we review de novo.[18] "[W]here there is a mutual misunderstanding regarding a material term of a pretrial agreement, resulting in an accused not receiving the benefit

---

[13] R. at 99.

[14] R. at 104.

[15] R. at 105–106 (emphasis added).

[16] App. Ex. III at 7.

[17] Clemency Request.

[18] *United States v. Lundy*, 63 M.J. 299, 301 (C.A.A.F. 2006).

of his bargain, the accused's pleas are improvident."[19] Whether a particular collateral consequence amounts to a material matter depends upon the circumstances of the case.[20] A term of an agreement can be said to be material when an accused's decision to enter into the agreement "rests in any significant degree on a promise or agreement of the [Government], so that it can be said to be part of the inducement or consideration."[21] "The appellant bears the burden of establishing that the term is material and that the circumstances establish governmental noncompliance."[22]

In *United States v. Jackson*, we held that the mere presence of an unenforceable provision in a pretrial agreement to defer and waive forfeitures for an appellant past his EAOS was not a material term under the circumstances of that case.[23] The *Jackson* Court found certain factors to weigh against a finding of materiality, including: (1) Sergeant [Sgt] Jackson's written agreement that he understood he would not receive pay or allowances if held beyond his EAOS; (2) Sgt Jackson's acknowledgement that he was past his EAOS and would not receive pay or allowances while in confinement; (3) his acknowledgement to the military judge that the provision would have no effect on his sentence; and (4) that Sgt Jackson raised no objection at trial, never requested to withdraw his pleas, and did not raise the matter in clemency.[24]

Appellant cites several cases for the proposition that certain factors may tip the scales in favor of a finding of materiality. When it is clear that the participants of a court-martial are unclear as to whether an appellant is past his EAOS, and the military judge informs an accused that he would receive the benefit of a forfeiture waiver provision, courts have found a plea to be improvident.[25] Similarly, where an appellant seeks enforcement of the provision in

---

[19] *United States v. Perron,* 58 M.J. 78, 82 (C.A.A.F. 2003).

[20] *United States v. Smith*, 56 M.J. 271, 273 (C.A.A.F. 2002).

[21] *Id.* at 279 (quoting *Santobello v. New York*, 404 U.S. 257, 261 (1971) (internal quotations omitted)).

[22] *United States v. Smead*, 68 M.J. 44, 59 (C.A.A.F. 2009) (citing *Lundy*, 63 M.J. at 302)).

[23] No. 201200475, 2013 CCA LEXIS 475, *7–9 (N-M. Ct. Crim. App. May 30, 2013) (unpublished).

[24] *Id.*

[25] *See e.g. United States v. Hardcastle,* 53 M.J. 299, 303 (C.A.A.F. 2000); *United States v. Williams*, 53 M.J. 293, 296 (C.A.A.F. 2000).

clemency or requests alternative relief from the CA, this has been held to be evidence that the term was material.[26]

*2. Discussion*

Here, we find that Appellant has failed to carry his burden to prove that the provision for the CA to defer and waive automatic forfeitures was a material term of his agreement. The presence of six factors compel this conclusion. First, both the plea agreement and the appellate rights acknowledgement clearly state that Appellant would receive no pay if held in confinement past his EAOS regardless of any term in his plea agreement. Second, the military judge confirmed that Appellant understood this term of his plea agreement prior to accepting his guilty pleas. Third, the parties all agreed at trial that Appellant was, in fact, past his EAOS. Fourth, Appellant did not seek enforcement of this term of his agreement in clemency submissions to the CA, nor did he seek alternative relief from the CA. Fifth, upon receipt of both the CA's Action and Entry of Judgment, Appellant did not object to either form's notation that Appellant had not requested deferment or waiver of forfeitures. And sixth, while appellate defense counsel has raised the issue as an assignment of error, Appellant has not filed a declaration or affidavit attesting to the materiality of the provision or claiming that but for the inclusion of the provision in his agreement, he would not have pleaded guilty.

While we acknowledge that the military judge and the parties injected some confusion in the record surrounding this provision, a careful read of the transcript reveals that the military judge and counsel were making a distinction between Appellant's pay while he was held in pretrial confinement and any pay during subsequent post-trial confinement. Trial defense counsel had alerted the military judge to the fact that he believed Appellant's pay had been improperly terminated prior to trial, however Appellant also affirmatively waived any relief for this pay issue. While the military judge did ask whether Appellant had set up an allotment pursuant to the plea agreement, trial defense counsel advised that Appellant had attempted to do so but was unable because he was listed in a no-pay status. Trial defense counsel then followed

---

[26] *See e.g. United States v. McCall*, No. 201200461, 2013 CCA LEXIS 471, *7–8 (N-M. Ct. Crim. App. May 30, 2013) (unpublished); *United States v. Thomas*, No. 201700074, 2017 CCA LEXIS 659, *5–8 (N-M. Ct. Crim. App. Oct. 26, 2017) (unpublished).

up, by saying that Appellant would set up the allotment *when and if* Appellant's pay restarted. It is clear, therefore, that no one at trial believed that the forfeiture waiver provision of the plea agreement was a foregone conclusion.

Finally, we note that Appellant's failure to demand specific performance or seek to withdraw from the plea agreement over the forfeiture waiver provision was a rational decision. Prior to trial, Appellant secured a favorable plea agreement that limited his confinement exposure and provided for withdrawal and dismissal of three specifications that, had he been convicted of them, would have triggered sex offender registration reporting requirements under Department of Defense Instruction 5525.20.

At trial, Appellant was sentenced to the minimum amount of confinement required by the agreement, and he was ultimately released from confinement twenty-one days after his sentence was announced.[27] Because automatic forfeitures only apply during post-trial confinement,[28] and only take effect fourteen days after announcement of sentence,[29] the provision in his plea agreement—had he otherwise been entitled to pay and allowances—would have only provided him with seven days of pay and allowances as an E-1.[30]

It is therefore unsurprising that Appellant, having already been advised that he was not entitled to pay after he was sentenced if he was held in confinement past his EAOS, would not have sought to withdraw from an otherwise very favorable plea agreement on the basis of a claimed misunderstanding of this term for such a minor potential monetary gain. His actions post-trial confirm what we set forth here: Appellant's decision to plead guilty did not rest in any significant degree upon this unenforceable and non-material provision of his plea agreement.[31]

---

[27] Gov't Resp. to Order to Produce.

[28] Article 58b, UCMJ, 10 U.S.C. § 858b.

[29] Article 57, UCMJ, 10 U.S.C. § 857.

[30] *See* Rule for Courts-Martial [R.C.M.] 1003(b)(2) requiring calculation of forfeitures based on the paygrade to which an accused is reduced.

[31] While we find that the provision here was immaterial, all practitioners are reminded of their obligation to understand each provision of a plea agreement and to excise those provisions that are inapplicable in a particular case. Given the timing of this case, the provision we address here was almost certain to never provide any benefit to Appellant. Defense counsel should never have included the provision in the offer, and the staff judge advocate should have advised the convening authority that it was

**B. Appellant's Sentence is not Inappropriately Severe**

*1. Law*

We review sentence appropriateness de novo.[32] In conducting our review, we "may affirm only the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved."[33] Article 66, UCMJ, provides courts of criminal appeals a great deal of discretion in determining whether a particular sentence is appropriate; however, in conducting our review, we are not authorized to engage in exercises of clemency.[34] Generally, sentence appropriateness should be judged by "individualized consideration" of the particular accused "on the basis of the nature and seriousness of the offense and the character of the offender."[35] "Other than to ensure that the appellant's approved sentence is one that 'should be approved,' . . . we generally refrain from second guessing or comparing a sentence that flows from a lawful pretrial agreement or a CA's lawful exercise of his authority to grant clemency to an appellant."[36]

---

an unenforceable provision and recommended it be removed prior to acceptance. Additionally, the military judge should have ensured that the record was clear that the provision was inapplicable and confirmed with the parties that the provision should be excised, or declined to accept the plea unless the provision was excised once she was made aware that Appellant was past his EAOS.

[32] *United States v. Baier*, 60 M.J. 382, 383–84 (C.A.A.F. 2005).

[33] Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1).

[34] *See United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) ("the sentence review function of the Courts of Criminal Appeals is highly discretionary"); *see also United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988) (Article 66 assigns the courts of criminal appeals "the task of determining sentence appropriateness" the "responsibility for clemency, however, was placed by Congress in other hands.").

[35] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (internal quotations and citations omitted).

[36] *United States v. Widak*, No. 201500309, 2016 CCA LEXIS 172, *7 (N-M. Ct. Crim. App. Mar. 22, 2016) (unpublished) (quoting Article 66(c), UCMJ) (citing to *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)); *see also United States v. Casuso*, No. 202000114, 2021 CCA LEXIS 328, *8 (N-M. Ct. Crim. App. Jun. 30, 2021) (unpublished) (questioning an appellant's "claim of inappropriate severity when the sentence he received was within the range of punishment he was expressly willing to accept in exchange for his pleas of guilty").

*2. Discussion*

Appellant claims that the part of his sentence that includes a bad-conduct discharge is inappropriately severe because "Appellant was a nineteen-plus year Marine who committed a one-night offense while suffering from too much drink."[37] While we recognize that Appellant had provided nearly 19 years of service at the time of his misconduct (he went over 19 years of service while awaiting trial), his misconduct was serious and warranted a bad-conduct discharge.

Appellant began the night by drinking while carrying a concealed firearm, knowing that his actions were prohibited under Arizona state law. He then compounded this misconduct by engaging in a series of escalating criminal activity. First, he fraternized with his junior Marines, disregarding his special position of trust as a staff non-commissioned officer. Then, he went to the home of Cpl Williams and escalated his behavior further. He assaulted LCpl Pace, made unwanted sexual advances toward Cpl Williams, and touched the latter on the chest and thighs without her permission.

LCpl Pace sought to remove Appellant from the situation and advised Appellant that his behavior was inappropriate. Appellant responded to LCpl Pace's correction by strangling him and striking him twice in the face with a closed fist. When confronted by his neighbor, Appellant retrieved a 9mm semiautomatic handgun and threatened to kill himself.

While we recognize that a bad-conduct discharge carries with it significant consequences, including the loss of a possible retirement had Appellant otherwise served honorably for less than two more years, we find that the sentence awarded Appellant was not inappropriately severe. The military judge properly considered all matters in aggravation, mitigation, and extenuation. She sentenced Appellant to the minimum amount of confinement permitted under the plea agreement and imposed the bad-conduct discharge Appellant agreed was required under his plea agreement. To rewrite the bargain would provide Appellant an unwarranted windfall. And disapproving Appellant's bad-conduct discharge on these facts would be an act of clemency, which we are not authorized to perform.

---

[37] Appellant's Br. at 13.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and that no error materially prejudicial to Appellant's substantial rights occurred.[38] However, we note that Entry of Judgment does not list the dates of Appellant's offenses, nor does it properly summarize the nature of the charges and specification.[39] Although we find no prejudice, Appellant is entitled to have court-martial records that correctly reflect the content of his proceeding.[40] In accordance with R.C.M. 1111(c)(2), we modify the Entry of Judgment and direct that it be included in the record.

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[38] Articles 59 & 66, UCMJ, 10 U.S.C. §§ 859, 866.

[39] *United States v. Wadaa*, 84 M.J. 652, 655 (N-M. Ct. Crim. App. 2024).

[40] *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998).

# United States Navy–Marine Corps Court of Criminal Appeals

| | |
|---|---|
| **UNITED STATES** | NMCCA NO. 202300249 |
| v. | **ENTRY**<br>**OF**<br>**JUDGMENT** |
| **Joseph E. AVILA**<br>**Gunnery Sergeant (E-7)**<br>**U.S. Marine Corps**<br><br>*Accused* | *As Modified on Appeal*<br><br>**20 February 2025** |

On 21 June 2023, the Accused was tried at Marine Corps Base Camp Pendleton, California, by a general court-martial, consisting of a military judge sitting alone. Military Judge Andrea Goode presided.

## FINDINGS

The following are Gunnery Sergeant Avila's pleas and the Court's findings to all offenses the convening authority referred to trial:

**Charge I:** **Violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.**

    *Plea:* Not Guilty.
    *Finding:* Withdrawn and dismissed.

**Specification 1:** **Abusive sexual contact by touching the breast of another without the consent of the other person on or about 20 November 2022.**

    *Plea:* Not Guilty.
    *Finding:* Withdrawn and dismissed.

**Specification 2:** **Abusive sexual contact by touching the inner thigh of another without the consent of the other person on or about 20 November 2022.**

    *Plea:* Not Guilty.
    *Finding:* Withdrawn and dismissed.

**Specification 3:** **Abusive sexual contact by touching the buttocks another without the consent of the other person on or about 20 November 2022.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Charge II:** **Violation of Article 128, UCMJ, 10 U.S.C. § 928.**

*Plea:* Guilty.

*Finding:* Guilty.

**Specification 1:** **Aggravated assault by strangulation on or about 20 November 2022.**

*Plea:* Guilty.

*Finding:* Guilty.

**Specification 2:** **Assault consummated by a battery by striking another on the head with his hand on or about 20 November 2022.**

*Plea:* Guilty.

*Finding:* Guilty.

**Charge III:** **Violation of Article 114, UCMJ, 10 U.S.C. § 914.**

*Plea:* Guilty.

*Finding:* Guilty.

**Specification:** **Unlawfully carrying a concealed weapon on or about 20 November 2022.**

*Plea:* Guilty.

*Finding:* Guilty.

**Charge IV:** **Violation of Article 92, UCMJ, 10 U.S.C. § 892.**

*Plea:* Guilty.

*Finding:* Guilty.

**Specification 1:** **Violation of a lawful general order, paragraph 10, chapter 3, Station Order 5510.8H, dated 19 July 2019, by wrongfully transporting a loaded firearm between on or about 19 November and on or about 20 November 2022.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 2:** **Violation of a lawful general order, Article 1165.2, U.S. Navy Regulations, dated 14 September 1990, by wrongfully having an unduly familiar relationship that did not respect**

the differences in rank between on or about 19 November and on or about 20 November 2022.

*Plea:* Guilty.
*Finding:* Guilty.

**Specification 3:** **Violation of a lawful general order, paragraph 9 of chapter 1, of enclosure 2 to Marine Corps Order 5354.1F, dated 20 April 2021, by wrongfully sexually harassing another on or about 20 November 2022.**

*Plea:* Guilty.
*Finding:* Guilty.

**Charge V:** **Violation of Article 134, UCMJ, 10 U.S.C. § 934.**

*Plea:* Guilty.
*Finding:* Guilty.

**Specification:** **Drunk and disorderly conduct between on or about 19 November 2022 and on or about 20 November 2022.**

*Plea:* Guilty.
*Finding:* Guilty.

**Additional Charge:** **Violation of Article 128, UCMJ, 10 U.S.C. § 928.**

*Plea:* Guilty.
*Finding:* Guilty.

**Specification 1:** **Assault consummated by a battery by touching another on the chest on or about 20 November 2022.**

*Plea:* Guilty.
*Finding:* Guilty.

**Specification 2:** **Assault consummated by a battery by touching the leg of another on or about 20 November 2022.**

*Plea:* Guilty.
*Finding:* Guilty.

**Specification 3:** **Assault consummated by a battery by touching the buttocks of another on or about 20 November 2022.**

*Plea:* Guilty.
*Finding:* Guilty.

## SENTENCE

On 21 June 2023, a military judge sentenced Gunnery Sergeant Avila to the following:

**Confinement for a total of 6 months.**

*Specification 1 of Charge II: confinement for six months.*

*Specification 2 of Charge II: confinement for six months.*

*Sole Specification of Charge III: confinement for six months.*

*Specification 2 of Charge IV: confinement for six months.*

*Specification 3 of Charge IV: confinement for six months.*

*Specification 4 of Charge V: confinement for four months.*

*Specification 1 of the Additional Charge: confinement for six months.*

*Specification 2 of the Additional Charge: Dismissed after findings for unreasonable multiplication of charges.*

*Specification 2 of the Additional Charge: confinement for six months.*

*All periods of confinement shall run concurrently.*

*Gunnery Sergeant was credited with having served 155 days of confinement.*

**Bad-conduct discharge.**

**Reduction to E-1.**

FOR THE COURT:

MARK K. JAMISON
Clerk of Court